Alfredo **RODRIGUEZ**, Petitioner,

v.

Christopher **ARTUZ**, Superintendent, Green Haven Correctional Facility, Respondent.

No. 97 CIV. 4694(SS).

United States District Court, S.D. New York.

Jan. 8, 1998.

---

Alfredo Rodriguez, Stormville, NY, pro se.

SOTOMAYOR, District Judge.

Respondent moves to dismiss this habeas petition on the ground that the claims asserted by petitioner are barred by the one-year limitations period of § 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104–132, 110 Stat. 1217 (April 24, 1996), codified at 28 U.S.C. § 2244(d). Petitioner mailed his petition to the Court over one year after the effective date of the AEDPA, and almost ten years after exhausting his state remedies. For the reasons to be discussed, I grant respondent's motion to dismiss this habeas petition as untimely.

## BACKGROUND

Petitioner was convicted on November 13, 1985, following a jury trial in New York State Supreme Court, Bronx County, of Murder in the Second Degree (New York Penal Law § 125.25(1)). Petitioner was sentenced to an indeterminate prison term of twenty-five years to life. Petitioner is currently incarcerated at Green Haven Correctional Facility.

Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, First Department, on the grounds that the judge improperly charged the jury regarding reasonable doubt, conflicting testimony, and intent. On January 22, 1987, the Appellate Division affirmed petitioner's conviction. *People v. Rodriguez*, 126 A.D.2d 994, 510 N.Y.S.2d 958 (1st Dep't 1987). On March 11, 1987, the New York State Court of Appeals denied petitioner leave to appeal. *People v. Rodriguez*, 69 N.Y.2d 885, 515 N.Y.S.2d 1034, 507 N.E.2d 1104 (1987). Petitioner did not file a petition for certiorari with the United States Supreme Court, nor has he made any state collateral attacks on his conviction.

On May 9, 1997, the Pro Se Office of this court received petitioner's instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, which was dated April 28, 1997. Respondent submitted its motion to dismiss on September 22, 1997, and petitioner opposed the motion on October 10, 1997. Respon-

dents submitted an affidavit in reply on November 10, 1997, and petitioner submitted a supplemental reply on or about December 1, 1997.

### DISCUSSION

 Petitioner filed this petition after April 24, 1996, the effective date of the AEDPA. The AEDPA amended the habeas corpus statute to require that habeas petitions "be filed no later than one year after the completion of state court review." 28 U.S.C. § 2244(d)(1)(A) (1997). However, "[t]ime during which a properly filed state court application for collateral review is pending is excluded from the one year period." *Reyes v. Keane*, 90 F.3d 676, 679 (2d Cir.1996); *see* 28 U.S.C. § 2244(d)(2). The Second Circuit in *Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir.1997), recognized that it would be unfair to deny access to the federal courts to prisoners who did not have notice of the new time limits of the AEDPA. Although other circuits have ruled that "habeas petitioners should have a full year after the effective date of the AEDPA to file their petitions in federal district court," *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir.1996) (en banc), *rev'd on other grounds*, — U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *United States v. Simmonds*, 111 F.3d 737 (10th Cir.1997); *Calderon v. United States District Court for the Central District of California (Beeler)*, 112 F.3d 386, 389 (9th Cir.1997), this Circuit has held that "a habeas corpus petitioner is entitled to a 'reasonable time' after the effective date of the AEDPA to file a petition." *Peterson*, 107 F.3d at 92. Furthermore, "in circumstances ... where a state prisoner has had several years to contemplate bringing a federal habeas corpus petition, we see no need to accord a full year after the effective date of the AEDPA." *Peterson*, 107 F.3d at 93.

The instant petition, challenging a conviction that was final prior to the effective date of the AEDPA, was dated and mailed April 28, 1997, *see* Pet. Mem. Opp. at 1, more than one year after the effective date, and is therefore time-barred.[1] *Peterson* held that

where, as here, the application of the AEDPA time limits would have cut off the ability to file immediately upon the AEDPA's taking effect, petitioners would be allowed a reasonable time thereafter in which to file. What *Peterson* did not specifically state is that "a reasonable time" cannot be longer than a year, but that is *Peterson*'s clear implication. To hold otherwise would be to place those whose convictions became final before the effective date of the AEDPA in a *better* position than those whose convictions became final after the effective date—to whom the AEDPA statute of limitations indisputably applies. Taking the instant petition as an example, if petitioner's conviction had become final on April 28, 1996, the *Peterson* reasonableness inquiry would be irrelevant, and the petition (dated April 29, 1997) would be unquestionably time-barred under the one-year statute of limitations imposed by the AEDPA. Clearly, the fact that petitioner has had even *longer* to file cannot serve to *extend* the limitations period. Because the instant petition was filed more than one year after the effective date of the AEDPA, it is time-barred under *Peterson*. *Accord Montalvo v. Portuondo*, No. 97 Civ. 3336, 1997 WL 752728, at *2 (S.D.N.Y. Dec. 4, 1997).

### II. Suspension Clause

 However, petitioner asserts that application of the statute of limitations to deny hearing his first federal petition is unconstitutional, relying upon *Rosa v. Senkowski*, No. 97 Civ. 2468, 1997 WL 436484 (S.D.N.Y. Aug. 1, 1997) ("*Rosa I*"), *certified for interlocutory appeal*, 1997 WL 724559 (S.D.N.Y. Nov. 19, 1997) ("*Rosa II*"), *appeal docketed*, No. 97–2974 (2d Cir. Dec. 31, 1997). In *Rosa*, Judge Robert W. Sweet held that the imposition of time limitations "is an unconstitutional 'suspension' of the writ of habeas corpus." *Rosa I*, 1997 U.S. Dist. Lexis 11177, at *19, 1997 WL 436484, at *7. To the extent that *Rosa* decides that the AEDPA's one-year statute of limitations is in all cases an unconstitutional suspension of the writ, the Court respectfully declines to follow Judge Sweet's

---

1. The timeliness of a prisoner filing is measured from the date the papers were given to prison authorities for mailing. *See Peterson*, 107 F.3d at 93.

holding.[2] Unlike Judge Sweet, this Court does not find that a statute of limitations applied to habeas petitions *per se* "deprives [petitioners] of the ability to obtain any collateral review in a federal court of the merits of [their] claim[s]." *Rosa I*, 1997 U.S. Dist. Lexis 11177, at \*19, 1997 WL 436484, at \*7.

The Suspension Clause states that "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public safety may require it." U.S. Const. art. I, § 9, cl. 2. The insistence of the framers on including this provision in Article I is testament to the belief that the Great Writ " 'has been for centuries esteemed the best and only sufficient defense of personal freedom.' " *Lonchar v. Thomas*, 517 U.S. 314, 324, 116 S.Ct. 1293, 1299, 134 L.Ed.2d 440 (1996) (quoting *Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 95, 19 L.Ed. 332 (1868)).

The Court first notes that there is considerable debate as to whether the "privilege of the writ" which may not normally be suspended includes the power of federal courts to issue the writ on behalf of state prisoners, or whether federal habeas for state prisoners is wholly statutory. *See Rosa I*, 1997 U.S. Dist. Lexis 11177, at \*30–34, 1997 WL 436484, at \*10–11 (summarizing debate); *see also* Steiker, *supra* note 4. Moreover, there is a question as to whether the scope of the habeas writ as known to the Framers was limited only to questions of jurisdiction and

inquiries into extrajudicial detention, *see Fay v. Noia*, 372 U.S. 391, 399–414, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (Brennan, J.); *id.* at 449–455 (Harlan, J., dissenting); Gary Peller, *In Defense of Federal Habeas Corpus Relitigation*, 16 Harv. C.R.-C.L. L.Rev. 579 (1982); Paul A. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv. L.Rev. 441 (1963); and if so, whether the expansion of the scope of inquiry available under habeas beyond the more narrow confines known in 1789 falls within the Suspension Clause's sweep. *See, e.g., Swain v. Pressley*, 430 U.S. 372, 384–86, 97 S.Ct. 1224, 1231–32, 51 L.Ed.2d 411 (1977) (Burger, C.J., concurring). Given the disposition of this case, the Court need not, and does not, address this issue, *see Felker v. Turpin*, 518 U.S. 651, ——, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996), and will focus instead on the question of whether the statute of limitations found in the AEDPA "suspends" the privilege of the writ.

The meaning of the Suspension Clause is not clearly defined in case law. Because Congress first expanded habeas to state prisoners in 1867 and, until the passage of the AEDPA in 1996, had placed few statutory limitations upon the writ, the courts have seldom been called upon to adjudicate the clause's contours. The Supreme Court has made its most significant pronouncements on the Suspension Clause in two cases.

---

**2.** In the opinion certifying his ruling for interlocutory appeal, Judge Sweet also held that the statute of limitations is a violation of the Due Process Clause of the Fourteenth Amendment. *See Rosa II*, 1997 U.S. Dist. Lexis 18310, at \*9, \*12–13, 1997 WL 724559, at \*3, \*5; *see also Montalvo*, 1997 U.S. Dist. Lexis 19288, at \*5–7, 1997 WL 752728, at \*2 (Sweet, J.) (confirming that *Rosa* opinions rest on both Suspension Clause and Fourteenth Amendment Due Process Clause). It is somewhat unclear what the rationale for Judge Sweet's Due Process holding is. This Court understands Judge Sweet in *Rosa I* to be using the Fourteenth Amendment primarily as a means of answering the objection that the Suspension Clause only prohibits suspension of the federal writ for federal prisoners. The theory employed by *Rosa I* is that the Fourteenth Amendment incorporates the privilege of federal habeas corpus against unconstitutional state detention, much in the way that most of the Bill of Rights, intended originally as a check on federal power, has been incorporated via the Fourteenth

Amendment as a limitation on state power as well. *See Rosa I*, 1997 U.S. Dist. Lexis 11177, at \*31–34, 1997 WL 436484, at \*10–11 ("Although the original Constitution did not prohibit suspension of the federal writ as to state prisoners, the Fourteenth Amendment 'incorporated' the privilege of the writ against the states, extending federal courts' protection of federal prisoners to state prisoners ...."); *see also* Jordan Steiker, "Incorporating the Suspension Clause: Is There a Constitutional Right to Federal Habeas Corpus for State Prisoners?," 92 Mich.L.Rev. 862, 899–912 (1994); *id.* at 912 ("In sum, the Suspension Clause, viewed through the lens of the Fourteenth Amendment, affords state prisoners a constitutional right to federal review of constitutional claims in the lower federal courts."). As noted *infra*, the Court's holding in this case does not require it to pass upon the issue of whether the Suspension Clause protects federal habeas for state prisoners and as such, assuming this understanding of Judge Sweet's ruling is correct, this Court need not address his Due Process holding.

In *Swain*, the Court considered a challenge to a provision of the District of Columbia Code which barred federal habeas for prisoners within the District of Columbia system in favor of a motion in the D.C. courts; the statute was expressly patterned after 28 U.S.C. § 2255, which substitutes a motion proceeding in the sentencing court for habeas corpus for federal prisoners. The D.C. provision, like § 2255, allowed for federal habeas if the motion remedy was "inadequate or ineffective to test the legality of [the applicant's] detention." D.C.Code. Ann. § 23–110(g) (1997). The Court held that "substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." *Id.* at 381, 97 S.Ct. at 1230; *see also United States v. Hayman*, 342 U.S. 205, 223, 72 S.Ct. 263, 274, 96 L.Ed. 232 (1952) (28 U.S.C. § 2255 not shown to be inadequate so Court would not reach Suspension Clause issue).

In *Felker* the Supreme Court addressed the contention that the limits on second and successive habeas petitions found in § 106 of the AEDPA, 28 U.S.C. § 2244(b) constituted an impermissible suspension of the writ. The Court first noted that "judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker*, 518 U.S. at ——, 116 S.Ct. at 2340 (quoting *Lonchar*, 517 U.S. at 321, 116 S.Ct. at 1298). Second, the Court noted that the limits on second petitions fell "well within the compass of [the] evolutionary process" of the abuse of the writ doctrine and were therefore not a suspension in violation of Article I. *Id.* at 2340.

This Court does not believe that *Felker* can be read for the proposition that Congress has plenary power over habeas corpus. Congress may very well have that power, but *Felker* did not so decide, because in *Felker* it was unnecessary completely to define the boundaries of Congress's power over habeas. What the Court did hold was that as long as the provisions enacted by Congress fall within the evolving scope of habeas doctrine, as defined by statute, rule, and precedent, they are not an unconstitutional suspension, leaving open the question of whether, and to what extent, Congress may go even farther.

Unlike the provisions limiting successive petitions found constitutional in *Felker*, however, the one-year statute of limitations is a much more radical departure from the Supreme Court's own shaping of the habeas remedy. The "abuse of the writ" doctrine, the evolving scope of which *Felker* held to encompass the successive-petition limitations of the AEDPA, is a "modified res judicata" doctrine which has only applied to the problem of successive petitions; it has never encompassed time limits applicable to first petitions. *See McCleskey v. Zant*, 499 U.S. 467, 477–89, 111 S.Ct. 1454, 1461–67, 113 L.Ed.2d 517 (1991) (recounting history of abuse of the writ doctrine). Thus *Felker*, without more, is not dispositive of the question of whether the AEDPA statute of limitations violates the Suspension Clause.

Throughout the evolving limitations on habeas corpus, neither the Supreme Court nor Congress had ever seen fit to place a strict statute of limitations on the availability of the writ prior to the AEDPA. *See Lonchar*, 517 U.S. at 327, 116 S.Ct. at 1301. The only previous time consideration comes under Habeas Rule 9(a), which gives a court the *option* of dismissing a habeas petition if the state can show that it has been prejudiced by delay in filing without a showing of good cause by the petitioner.[3] Rule 9(a) essentially embodies the equitable doctrine of laches, *see* Advisory Committee Notes to Rule 9 ("[Rule 9(a)] is not a statute of limitations. Rather, the subdivision is based on the equitable doctrine of laches."), and in accordance with its equitable nature, it is applied flexibly in the court's discretion in order to meet its purpose—namely, to prevent a petitioner from unfairly disadvantaging the state by delaying adjudication of his habeas claims until witnesses are unavailable, memories

---

**3.** In fact, as originally proposed, Habeas Rule 9(a) contained what would have been the closest thing to a time limitation heretofore seen in habeas—a rebuttable presumption that a petition filed more than five years after conviction preju- diced the state's ability to respond. However, Congress expressly rejected this provision in adopting the rules. *See Lonchar*, 517 U.S. at 325, 116 S.Ct. at 1300.

stale, and evidence difficult to produce. The ultimate concern of this rule is that adjudications under a habeas petition be fair and accurate. *See* Advisory Committee Notes to Habeas Rule 9(a) (when claims are delayed, "both the attorney for the defendant and the state have difficulty in ascertaining what the facts are").

The statute of limitations in the AEDPA, on the other hand, serves a different purpose. Compared with the balancing required by Rule 9(a), its concern is not the accuracy of the proceeding or the fairness to the state's ability to defend its judgment—even if it were uncontroverted that the state had not been prejudiced and that a completely accurate hearing could be had on the merits, a time-barred petition must still be dismissed. Its overriding purpose, particularly considering the relatively short time period and in light of the limitations on second and successive petitions, is one of speed and finality. *See, e.g.,* 142 Cong. Rec. S3462 (daily ed. Apr. 17, 1996) (statement of Sen. Heflin) ("Reform of the habeas corpus process will speed up the imposition of sentences . . . ."); 141 Cong. Rec. S7877 (daily ed. June 7, 1995) (statement of Sen. Dole) ("[T]hese landmark reforms will go a long, long way to streamline the lengthy appeals process and bridge the gap between crime and punishment in America."); 141 Cong. Rec. S7657 (daily ed. June 5, 1995) (statement of Sen. Dole) ("If we really want justice that is 'swift, certain, and severe' . . . then we must stop the endless appeals and endless delays that have done so much to weaken public confidence of our system of criminal justice."); 141 Cong. Rec. S7679 (daily ed. June 5, 1995) (statement of Sen. Hatch) ("By passing these provisions, we ensure that those responsible for killing scores of U.S. citizens will be given the swift penalty that we in society exact upon them").

The Court does not question that these are valid and legitimate goals for Congress to pursue. The Supreme Court has recognized that the development of habeas procedural doctrine has been properly concerned with "avoiding serious, improper delay . . . and interference with a State's interest in the 'finality' of its own legal process." *Lonchar,*

517 U.S. at 321, 116 S.Ct. at 1298. However, these goals have never been the only concern of habeas procedures; rather, these goals are balanced against the need to "maintain the courts' freedom to issue the writ, aptly described as the 'highest safeguard of liberty.' " *Id.* (quoting *Smith v. Bennett,* 365 U.S. 708, 712, 81 S.Ct. 895, 898, 6 L.Ed.2d 39 (1961)). In *Lonchar,* in fact, the Supreme Court expressly disapproved the lower court's dismissal of a delayed habeas petition where the state had shown no prejudice resulting from the delay, reasoning that "the prejudice requirement represents a critical element in the balancing of interests undertaken by Congress and the framers of the Rule." *Lonchar,* 517 U.S. at 325, 116 S.Ct. at 1300. This was of particular concern to the *Lonchar* Court where, as here, a first federal habeas petition is involved, because dismissal of a first petition "denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Id.* at 1299.

■ Given the history of the habeas writ, both as shaped by Congress and by the Supreme Court, this Court believes that the time limitations of the AEDPA, if applied strictly, cannot be said to fall "well within the compass of this evolutionary process," *Felker,* 518 U.S. at ——, 116 S.Ct. at 2340, and therefore cannot conclude on the reasoning of *Felker* alone that the Suspension Clause has not been violated. On this point, Judge Sweet and I agree. *See Rosa I,* 1997 U.S. Dist. Lexis 11177, at *21–22, 1997 WL 436484, at *7. This conclusion does not end the inquiry, however. *Felker* did not hold, and this Court should not be construed as holding, that Congress may do no more to shape the habeas remedy than codify prior judicial holdings. Habeas is still a statutory remedy, and "within constitutional constraints . . ." the "balancing of objectives . . . is normally for Congress to make." *Lonchar,* 517 U.S. at 321, 116 S.Ct. at 1298.

The Court must therefore turn to the more basic inquiry of *Swain:* does the time limitation of the AEDPA render the habeas remedy "ineffective or inadequate to test the legality of detention"?

Unfortunately, the phrase "inadequate or ineffective to test the legality of detention" does not by itself significantly advance the inquiry into whether there has been a suspension of the writ. In *Swain*, the Court expressly declined to elaborate on what facts would be necessary to make a showing of inadequacy. *See Swain*, 430 U.S. at 383 n. 20, 97 S.Ct. at 1230 n. 20. Nor have the federal courts, in applying the identical language found in 28 U.S.C. § 2255, had much cause to elaborate on its meaning. *See Triestman v. United States*, 124 F.3d 361, 377 (2d Cir.1997) ("While there have been hundreds of cases reciting this statutory provision, courts have yet to articulate its scope and meaning.").

The Second Circuit has recently addressed the "inadequate or ineffective" language of 28 U.S.C. § 2255 in *Triestman*. Although the Second Circuit was interpreting a statute, not the Suspension Clause, and care must be taken in transplanting interpretation of the former into the latter, the fact that *Triestman* was interpreting § 2255 in part to avoid running afoul of the Suspension Clause, *see id.* at 377, leads this Court to find the exposition in *Triestman* helpful.

One holding of *Triestman* was a rejection of the United States' argument that "inadequate or ineffective" referred only to practical considerations, such as difficulty in obtaining the movant's presence at a § 2255 hearing. *See id.* at 376; *accord In re Dorsainvil*, 119 F.3d 245, 250 (3d Cir.1997). *Triestman* also noted, however, that the mere fact that a federal prisoner "faces a substantive or procedural barrier" to relief does not render § 2255 inadequate or ineffective. *Triestman*, 124 F.3d at 376. In addition, it seems fairly clear from case law, and also as a matter of logical necessity, that the denial of relief on the substantive merits, as opposed to a procedural bar, does not render the remedy inadequate. *See Williams v. United States*, 481 F.2d 339, 344 (2d Cir. 1973) ("Lack of success in the chosen forum, of course, does not make the [ § 2255] remedy inadequate or ineffective."); *Rigler v. Keller*, No. 96–CV–0588, 1997 WL 17654, at *1 n. 1 (N.D.N.Y. Jan. 14, 1997) ("[A] remedy is not 'inadequate or ineffective under section

2255 merely because the sentencing court denied relief on the merits.'") (quoting *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir.1988)). The Court believes that the meaning of "inadequate or ineffective" for purposes of the Suspension Clause, as the Second Circuit found the identical language in § 2255 did, lies somewhere between mere practical considerations and "the full set of cases" in which the habeas remedy is "unavailable or unsuccessful." *Id.* at 377. The question is, where?

Unfortunately, it is at this point that *Triestman*'s usefulness to our inquiry reaches an end. Because *Triestman* was expounding the "safety valve" of § 2255 allowing petitioners to resort to the traditional habeas remedy under § 2241, the *Triestman* court was able to hold that 28 U.S.C. § 2255 is "inadequate or ineffective," and therefore petitioners could still resort to habeas corpus, whenever "failure to allow for collateral review would raise serious constitutional questions." *Id.* There is, however, no such safety valve in 28 U.S.C. § 2244, which appears to apply to *all* habeas petitions submitted by state prisoners: "A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). If failure to allow for collateral review under the AEDPA's statute of limitations "raises serious constitutional questions" under the Suspension Clause, there is no statutory alternative to resort to; this Court must squarely face those questions.

The question, then, is this: in what subset of cases in which a petitioner is procedurally barred from obtaining a writ of habeas corpus does the procedural bar render the habeas remedy "inadequate or ineffective"? Cases falling outside of this subset meet the test of *Swain* and are therefore not violations of the Suspension Clause. (Cases within this subset are not necessarily violations, because the more difficult question of the applicability of the Suspension Clause to federal habeas for state prisoners would then have to be answered.)

■ As a first cut, one can say this: Habeas is not rendered ineffective or inadequate in a particular instance merely because a

procedural bar has fallen into place. This is, after all, the outcome of any number of procedural decisions by the Supreme Court on habeas—many petitioners have been procedurally denied the opportunity to present a first petition for hearing on the merits. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 757, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991) (barring habeas claims for failure to appeal in state courts); *McCleskey,* 499 U.S. at 503, 111 S.Ct. at 1475 (barring consideration of claim based on abuse of the writ doctrine). Although the Court has not directly addressed a Suspension Clause claim in any of those cases, *Felker* strongly suggests that any procedural bars created by the Supreme Court in the evolution of its habeas jurisprudence are *per se* not suspensions of the writ. *See Felker,* 518 U.S. at ——, 116 S.Ct. at 2340.

On the other hand, courts have often expressed concern that cases in which a petitioner could *never* have raised his or her claim create, or at least implicate, grave constitutional issues. *See, e.g., Martinez–Villareal v. Stewart,* 118 F.3d 628, 632 (9th Cir. 1997) (interpreting AEDPA's gatekeeping provisions to bar all review of competency to be executed claims would create "strong indications" of a "serious constitutional problem" under the Suspension Clause); *cf. Lonchar,* 517 U.S. at 323, 116 S.Ct. at 1299 ("Dismissal of a *first* federal petition is a particularly serious matter, for that dismissal denies the petitioner the protection of the Great Writ entirely, risking injury to an important interest in human liberty."); *Triestman,* 124 F.3d at 378–79 & n. 21 (inability of petitioner to ever raise actual innocence claim collaterally raises serious questions under Due Process Clause and Eighth Amendment; reserving whether serious Suspension Clause issue raised). In most of these cases, the courts have found reasonable statutory readings that enabled them to avoid reaching the constitutional issues. Nevertheless, the Court is persuaded that, for purposes of this case, we may assume that a procedural bar which prevents a petitioner from ever raising a federal claim in habeas would render habeas ineffective and inadequate so that *Swain* would not be satisfied. Nor does this Court believe that strict impossibility of filing a

claim exhausts this subset of cases. If a procedural bar creates an *unreasonable* burden upon petitioners, the Court believes that such a bar would render habeas no less ineffective and inadequate than strict impossibility.

Finally, the Court notes that other courts have stated, at least in interpreting the language of 28 U.S.C. § 2255, that if a petitioner can show he is actually innocent of the crime for which he is convicted, "such a circumstance inherently results in a complete miscarriage of justice" which would render § 2255 inadequate and ineffective. *In re Dorsainvil,* 119 F.3d 245, 250–51 (3d Cir. 1997) (quoting *Davis v. United States,* 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2304–05, 41 L.Ed.2d 109 (1974)); *cf. Triestman,* 124 F.3d at 378–80 & n. 21 (barring a claim of actual innocence previously unavailable would raise "serious Eighth Amendment and due process questions"; reserving question of whether Suspension Clause would be implicated). Because no claim of actual innocence has been raised by the petitioner, nor does it appear from the face of the petition that he could make the "substantial showing" necessary for such a claim, *see Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 868, 130 L.Ed.2d 808; *id.* (petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt"), this Court needs not decide whether procedural bars to habeas where actual innocence could be shown rises to the level of a Suspension Clause violation.

■ Thus, the Court is prepared to say the following: at least where no claim of actual or legal innocence has been raised, as long as the procedural limits on habeas leave petitioners with some reasonable opportunity to have their claims heard on the merits, the limits do not render habeas inadequate or ineffective to test the legality of detention and, therefore, do not constitute a suspension of the writ in violation of Article I of the United States Constitution. *See* Steiker, *supra* note 2, at 918 ("[T]he notion that [habeas] should be perpetual must be abandoned.... [A] more sensible understanding of the guarantee against 'suspension' is that

it obligates Congress to provide one meaningful, nondiscretionary opportunity to secure federal review of federal claims.").

■ The AEDPA's statute of limitations does not create an unreasonable barrier preventing state prisoners from petitioning the federal courts for habeas relief. The writ is still available, but Congress has required that prisoners act expeditiously to take advantage of federal review—within one year of the time when the right to petition for habeas accrues. This Court finds no grounds on which to hold that it is *per se* unreasonable to expect petitioners to file their federal habeas within one year; accordingly, the statute of limitations in the AEDPA does not on its face render habeas "ineffective or inadequate to test the legality of detention" and is therefore not, at least in general, an unconstitutional suspension of the writ.

As applied to prisoners whose right to petition for habeas "accrued" prior to the AEDPA, the Second Circuit in *Peterson* has afforded those petitioners a "reasonable time" after the enactment of the AEDPA to file their petitions. Almost by definition, this grace period affords petitioners reasonable opportunity to test the legality of their detention.

The Court declines to decide whether in some cases the one-year provision of the AEDPA might render the habeas remedy "ineffective or inadequate to test the legality of detention." The AEDPA has several provisions which have the effect of resetting the one-year clock, *see* 28 U.S.C. § 2244(d)(1) (statute of limitations runs one year from the latest of (A) conclusion of direct review; (B) removal of illegal state impediment to filing; (C) date of Supreme Court holding creating new constitutional right applicable on collateral review; or (D) discovery of factual predicate of claims); these provisions have only begun to be construed by the courts. The myriad of possible fact patterns which might arise is vast; it is certainly conceivable at this point that in the rare case one year would in fact be insufficient, *cf. Calderon v. United States Dist. Ct. for the Central Dist. of Calif. (Beeler),* 1997 WL 671283 (9th Cir. 1997) (AEDPA statute of limitations is subject to equitable tolling), or that such injus-

tice would flow from a strict application, that the question of whether the Suspension Clause forbade application in that case would be squarely presented.

Such a case is not presented here, however. Rodriguez has had almost ten years to file his federal petition. He was afforded a reasonable time after the enactment of the AEDPA to file. He has pointed the Court to no facts which explain why it was unreasonable for him to file his petition within this time. Therefore, as applied to the petitioner, the Court finds that the statute of limitations does not constitute a suspension of the privilege of the writ as defined by Article I.

At bottom, this Court's disagreement with *Rosa* depends upon what one takes Judge Sweet to have decided. At its broadest, *Rosa* could be read to assert that the Suspension Clause entitles every incarcerated person one opportunity to have his federal claims heard on the merits in federal habeas. This Court's holding, while not passing on this question, is not to the contrary. What this Court takes issue with is the suggestion that a first federal petition must therefore always be decided on the merits and not barred procedurally. *See Rosa I,* 1997 U.S. Dist. Lexis 11177, at *19, 1997 WL 436484, at *7 ("The application of the time limit to Rosa's first federal habeas petition effectively deprives him of the ability to obtain any collateral review in a federal court of the merits of his claim that his confinement violates his constitutional rights. Such a deprivation constitutes an unconstitutional 'suspension' of the writ of habeas corpus."). Such a rationale simply cannot be squared with the numerous Supreme Court cases barring first federal petitions as abusive, successive, or procedurally defaulted.

A more narrow reading of *Rosa* is that procedural bars are not necessarily problematic, but that *time* limits are because the history of the federal habeas writ has never included such limits. *See Rosa I,* 1997 U.S. Dist. Lexis 11177, at *24–29, 1997 WL 436484, at *8–*10. As noted above, this Court agrees that the AEDPA statute of limitations is sufficiently new to habeas corpus that reliance cannot be placed solely on *Felker* to uphold its constitutionality. However, as also noted above, *Felker*'s holding, that congressional limitations within the

evolving scope of prior habeas jurisprudence do not violate the Suspension Clause, in no way implies that *only* such limitations are constitutional.

Nor does this Court find persuasive the numerous cases cited in *Rosa* in which the Supreme Court demonstrated a willingness to adjudicate constitutional claims despite the passage of many years since conviction. *See Rosa I*, 1997 U.S. Dist. Lexis 11177, at *24–25, 1997 WL 436484, at *8–9 (discussing *Chessman v. Teets*, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957); *Herman v. Claudy*, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); *Palmer v. Ashe*, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951); and *Uveges v. Pennsylvania*, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948)). The fact that the Supreme Court, in exercising its certiorari jurisdiction, chose to reach the merits of cases many years after conviction may say something about the Court's view of the wisdom or justice of time limits, but it in no way implies that the Court felt *constitutionally* constrained to hear those cases. Moreover, as there were no congressional statutes purporting to place time limits of any kind whatsoever on federal habeas, these cases say nothing about Congress's power to do so or the constitutional implications thereof (if any).[4]

Finally, the narrowest reading of *Rosa* is that time limits are not *per se* unconstitutional, but that the AEDPA's limits are insufficient to give a meaningful opportunity for federal review. *See Rosa I*, 1997 U.S. Dist. Lexis 11177, at *28 n. 3, 1997 WL 436484, at *9 n. 3 ("[I]t may be that even if a more generous limitations period would not violate the Suspension Clause, a one-year period would be unreasonably brief to protect the privilege of the writ and thus violate Due Process."). The Court simply cannot agree that one year is insufficient to file a federal habeas petition, particularly where a petitioner, like Rodriguez, is making the same arguments presented during his state proceedings, and considering that the period is tolled while state collateral relief is sought, *see* 28 U.S.C. § 2244(d)(2), and that the one-year period "resets" upon the removal of illegal state impediments to filing, *see* 28 U.S.C. § 2244(d)(1)(B), or a new Supreme Court rule of constitutional law made retroactive on collateral review, *see* 28 U.S.C. § 2244(d)(1)(C), or the diligent discovery of new evidence, *see* 28 U.S.C. § 2244(d)(1)(D). As noted above, there may well be cases in which these provisions do not leave a reasonable opportunity to file, but this Court sees no reason why in general this should be the case, nor does *Rosa* provide any such reason.

In summary, I find that a filing of a habeas petition over one year after the effective date of the AEDPA to be "unreasonable" as that term was set forth by the Second Circuit in *Peterson*, and that application of this time limit is not a violation of the Suspension Clause of the United States Constitution.

### *CONCLUSION*

For the reasons discussed, defendant's motion to dismiss is granted. The petition for a writ of habeas corpus is denied and dismissed.

SO ORDERED.

---

**4.** This Court also notes that it is simply incorrect to say that in these cases "the Supreme Court has ruled that lower courts were obliged to hear habeas corpus petitions, even when they were filed many years after a prisoner's conviction became final." *Rosa I*, 1997 U.S. Dist. Lexis 11177, at *24–25, 1997 WL 436484 at *8. In all four of these cases, the lower courts had denied the petitions on the merits; the issue of the propriety of hearing these cases due to untimeliness was not before the Court. Moreover, three of these cases—*Herman, Palmer,* and *Uveges*—were Supreme Court reviews of *state* habeas proceedings, so the timeliness of the petitions would have been questions of state law, presumably unreviewable by the Supreme Court. Simi-

larly, petitioner's citations to *Heflin v. United States*, 358 U.S. 415, 420, 79 S.Ct. 451, 454, 3 L.Ed.2d 407 (1959) (Stewart, J., concurring, joined by four other Justices) (in § 2255, "as in habeas corpus, there is no statute of limitations . . . . "), and to *United States v. Smith*, 331 U.S. 469, 475, 67 S.Ct. 1330, 1333, 91 L.Ed. 1610 (1947) ("[H]abeas corpus provides a remedy for jurisdictional and constitutional errors at the trial without limit of time"), are unavailing. The dicta cited in both of these cases merely recount the fact that there was no statute of limitations on federal habeas—obviously an accurate statement of pre-AEDPA law, but of no bearing on the constitutional issue presented now before this Court.