Thomas LUCIDORE, Petitioner–
Appellant,

v.

**NEW YORK STATE DIVISION
OF PAROLE, Respondent–
Appellee.**

Docket No. 99–2492

United States Court of Appeals,
Second Circuit.

Argued: March 16, 2000

Decided: April 6, 2000

Gary A. Farrell, Brooklyn, N.Y. (Jason H. Sterne, of counsel), for Petitioner–Appellant.

Mary C. Farrington, Assistant District Attorney for New York County (Robert M. Morgenthau, District Attorney for New York County, and Marc Frazier Scholl, Assistant District Attorney for New York County, of counsel), for Respondent–Appellee.

Before: CABRANES and SOTOMAYOR, Circuit Judges, and TRAGER, District Judge.*

JOSÉ A. CABRANES, Circuit Judge:

Petitioner-appellant Thomas Lucidore appeals from a judgment entered by the United States District Court for the Southern District of New York (Andrew J. Peck, *Magistrate Judge*) on August 3, 1999.[1] The District Court dismissed Lucidore's petition for a writ of habeas corpus as untimely, but granted a certificate of appealability ("COA") to this Court. On appeal, Lucidore concedes that his petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1),[2] but argues that the one-year statute of limitations prescribed by AEDPA violates the Suspension Clause of the Constitution, U.S. Const. art. I, § 9, cl. 2.[3] Alternatively, Lucidore contends that the Suspension

---

* The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

1. On consent of the parties, District Judge John E. Sprizzo designated Magistrate Judge Peck to conduct all proceedings and order the entry of judgment in this case, pursuant to 28 U.S.C. § 636(c)(1) ("Upon the consent of the parties, a full-time United States magistrate ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.").

2. Section 2244 provides in relevant part:

 (d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
 (A) the date on which the judgment became final by the conclusion of direct review or

the expiration of the time for seeking such review;
 (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
 (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
 (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

3. The Suspension Clause provides:

 The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

Clause, the Eighth Amendment's prohibition on cruel and unusual punishment, the Fourteenth Amendment's Due Process Clause, and principles of equitable tolling each requires an exception to AEDPA's limitations period in cases where a defendant demonstrates "actual innocence." This claim arises out of the well-established principle that "where possible, [courts must] interpret[ ] congressional enactments so as to avoid raising serious constitutional questions." *Cheek v. United States,* 498 U.S. 192, 203, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991); *see also Johnson v. Robison,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). That is, Lucidore contends that where AEDPA's statute of limitations operates to bar the habeas petition of a prisoner who is actually innocent, serious constitutional questions are implicated, and that AEDPA's limitations period therefore must be read to include, by implication, an exception for cases in which a prisoner is actually innocent.

Respondent New York State Division of Parole (the "State"), represented by the District Attorney's Office of New York County, in turn claims that the COA issued by the District Court was invalid and that we therefore lack jurisdiction over the instant appeal. In the alternative, the State argues that none of the stated constitutional provisions has been violated and that Lucidore's petition is time-barred.

We hold that the COA issued in this case is valid and that AEDPA's statute of limitations does not violate the Suspension Clause. Because we conclude that Lucidore has not demonstrated "actual innocence," we do not reach the question of whether the Constitution requires that we assume the existence of an "actual innocence" exception to AEDPA's limitations period.

## I.

The following facts are drawn from the record on appeal and, unless otherwise stated, are undisputed.

On February 18, 1993, Lucidore met MT,[4] a business associate, for drinks and dinner in Manhattan. Shortly after midnight, MT accompanied Lucidore to his hotel room, where she used the bathroom. For the next several hours, Lucidore bound and gagged MT and the two engaged in various sexual acts, including oral sodomy. Lucidore maintains that the sexual acts were consensual; MT claims that they were forced. Sometime around 4 or 5 a.m., Lucidore arranged for a car service to take MT home to Clarkstown, in Rockland County, New York. Later that morning, MT reported the incident to the Clarkstown police, who interviewed her and prepared an official report that same day (February 19, 1993). The case then was referred to the Special Victims Unit of the New York City Police Department, presumably because Manhattan was the place of the alleged crimes. MT was interviewed there on February 20, 1993. Over the next month, MT, at the direction of the New York City police, recorded several conversations with Lucidore in which he admitted, *inter alia,* that "what [he] did was horrible" and that he would "like to come up with a good apology."

MT met Lucidore in Manhattan for dinner on March 17, 1993, and recorded their conversation. Shortly after this meeting ended, the New York City police arrested Lucidore. At the police station, Lucidore was interrogated and made a videotaped statement in which he admitted that he had "restrain[ed]" MT and "force[d] her to have sex", and that the encounter had not been consensual. Lucidore subsequently was charged in Supreme Court, New York County, with three counts of Sodomy in the First Degree, two counts of Rape in the First Degree, Kidnaping in the Second

---

4. In light of New York Civil Rights Law § 50–b, which provides that the identities of the victims of sex offenses be kept confidential by the State, we refer to the victim of Lucidore's crime as "MT."

Degree, eight counts of Sexual Abuse in the First Degree, and one count of Unlawful Imprisonment in the First Degree.

On or about March 23, 1993, the District Attorney's Office of New York County served the defendant with a Voluntary Disclosure Form indicating, *inter alia*, that they did not have any *Brady* material to be disclosed to the defendant[5]. *See Brady v. State of Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that suppression by the prosecution of material evidence that is favorable to an accused, upon request, violates the accused's right to due process of law). On May 10, 1993, defendant's trial counsel filed an "omnibus motion" in which he requested, *inter alia*, "all records, investigative reports, notes or memoranda of any police officers ... who were in any way involved in this case" and "all such materials from the police department or departments of locales other than New York City who had any contact with the complainant or with any witness or potential witnesses." On June 3, 1993, Assistant District Attorney Marlene Besterman of the District Attorney's Office of New York County filed an "Affirmation in Response to Defendant's Omnibus Motion" indicating that the Voluntary Disclosure Form served on Lucidore disclosed all *Brady* material "known to exist at this time"—in other words, that there was no such material.

Following this exchange, and after the denial of Lucidore's motion to suppress the police station videotape and his other recorded statements, Lucidore pleaded guilty in February 1994 to one count of Sodomy in the First Degree. Lucidore did not timely appeal from the judgment of conviction and sentence was imposed on April 12, 1994.

As a result of discovery in a civil case initiated by MT against both Lucidore and the hotel where the incident took place, Lucidore obtained, in May 1996, a copy of a police report from the Clarkstown Police Department. The report indicated that MT had stated that Lucidore had subjected to a variety of abuse, but that no rape had taken place. The Clarkstown police report also (1) noted that MT "reluctantly" acknowledged that she could have gotten up and walked out when the abuse first started, though she was afraid to do so; (2) contained the interviewing officer's personal observation that the physical marks on MT's body "could have been made during the course of lovemaking"; and (3) indicated that MT was reluctant to pursue a criminal complaint, out of fear that her coworkers would learn of the incident; and (4) stated that she was going forth with the charges at the insistence of her brother-in-law.[6] On May 28, 1996, Lucidore sought leave from the Appellate Division of the Supreme Court to file a late Notice of Appeal, alleging that the Clarkstown police reports were *Brady* material that had not been provided to Lucidore. On July 18, 1996, the Appellate Division denied Lucidore's motion for leave to file a late notice of appeal. In April 1997, as a result of discovery in the civil case, Lucidore's attorney gained access to the New York City Police Department file on Lucidore's case, the index to which referenced the Clarkstown reports. (Lucidore's Clarkstown file apparently had been forwarded to the New York City Police Department when the case was referred there).

On August 7, 1997, Lucidore was paroled. On April 9, 1998, Lucidore filed a motion to vacate his conviction, pursuant

---

5. Specifically, the Voluntary Disclosure Form contained a section that the prosecution was to check if it had any *Brady* information to turn over to the defendant; the prosecution left the section blank.

6. In addition, the Clarkstown police report indicates the investigating officer's view that

MT "would not make a good witness" and that the case against Lucidore would not be "clear-cut." We list these items separately, however, because they are not among the portions of the Clarkstown report cited by the defendant as exculpatory material.

to New York Criminal Procedure Law § 440.10,[7] in the Supreme Court, New York County, alleging that the prosecutor's failure to provide him with the Clarkstown police report during discovery was a violation of the rule articulated in *Brady* and its progeny. Ludicore claimed, in particular, that "[h]ad [he] known of the contents of the Clarkstown Police Report, [he] would not have pled guilty and would have exercised [his] constitutional right to stand trial."

In a decision issued on September 30, 1998, Justice Bruce Allen of the New York State Supreme Court denied Lucidore's § 440.10 motion. Although he found that Lucidore's guilty plea did not constitute a waiver of his *Brady* claim, and that the prosecution had in fact committed a *Brady* violation, Justice Allen nevertheless concluded that there was not a "reasonable possibility" that Lucidore would not have pleaded guilty if he had possessed the Clarkstown report prior to entering his plea. On October 30, 1998, Lucidore sought leave to appeal to the Appellate Division, First Department, from Justice Allen's decision; the Appellate Division denied his request on December 22, 1998.

On April 22, 1999, Lucidore filed a habeas petition in the District Court pursuant to 28 U.S.C. § 2254, again based on the prosecution's failure to supply him with the Clarkstown report. On August 3, 1999, Magistrate Judge Peck dismissed Lucidore's § 2254 petition as untimely under AEDPA's one-year statute of limitations. This appeal followed.

## II.

We note at the outset our surprise at the failure of the District Attorney's Office of New York County even to inquire, as part of its response to Lucidore's § 2254 petition, into how the *Brady* violation underlying Lucidore's habeas petition was permitted to occur—an indifference to the underlying factual background of the case that persisted through the date of oral argument before us. We consider the violation at issue to be serious and, based on the record before us, inexcusable. For the reasons that follow, however, we agree with the District Court that Lucidore's habeas petition must be dismissed because it is time-barred under AEDPA.

\* \* \*

■ The District Court granted Lucidore's request for a certificate of appealability "because the Second Circuit has not fully addressed the issues involved in this Opinion and thus Lucidore has made a substantial showing of the denial of a constitutional right (if this Court's Opinion were found to be incorrect)." *Lucidore v. New York State Div. of Parole*, No. 99 Civ. 2936, 1999 WL 566362, at \*7 (S.D.N.Y. Aug. 3, 1999). The State argues that this statement is insufficient to confer appellate jurisdiction because (1) Lucidore has not made the requisite "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); and (2) the District Court's above-quoted statement fails to meet the requirement of 28 U.S.C. § 2253(c)(3) that a certificate of appealability "shall indicate which specific issue or issues satisfy th[at] showing."[8]

---

**7.** Section 440.10 provides in pertinent part

 1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that:

 . . . . .

 (g) New evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create

a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence.

**8.** Section 2253(c) provides in relevant part:

 (2) A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right.

The Supreme Court has held that a "substantial showing" does not compel a petitioner to demonstrate that he would prevail on the merits, but merely that the issues involved in his case "are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (internal quotation marks omitted) (emphasis and alteration in original); *see also Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir.1998) (same); *Nelson v. Walker*, 121 F.3d 828, 832 (2d Cir.1997) (same). Where a district court has found that one of these conditions exists, and accordingly has issued a certificate of appealability, or COA, we have held that the COA is presumptively valid and may not be challenged as improvidently granted. *See Soto v. United States*, 185 F.3d 48, 52 (2d Cir. 1999) (holding that, once issued, a COA suffices to confer jurisdiction); *Thomas v. Greiner*, 174 F.3d 260, 261 (2d Cir.1999) (per curiam) (acknowledging a *sub silentio* Second Circuit rule permitting appellate review of procedural errors that do not rise to the level of denial of a constitutional right). In fact, in *Soto*, we specifically adopted the reasoning of the Seventh Circuit that a COA is a "screening device" or gate-keeping tool used to conserve judicial and prosecutorial resources, and that once a case has proceeded to briefing and such resources have been invested, "there is little point in scrutinizing the certificate of appealability." *Soto*, 185 F.3d at 52 (quoting *Young v. United States*, 124 F.3d 794, 799 (7th Cir.1997)).

> (3) The certificate of appealability ... shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

9. *Slack* concerns the question of whether, in cases where a habeas corpus petition is dismissed on exhaustion grounds, a petition filed after exhaustion that contains claims not raised in the first petition is a "second or successive" habeas corpus application. *See* —— U.S. ——, 119 S.Ct. 1025, 143 L.Ed.2d 36 (1999). The District Court in

The State concedes that our holdings in *Soto* and *Thomas* foreclose its challenge to the COA issued in this case. Nevertheless, the State contends that the Supreme Court's decision in the pending case of *Slack v. McDaniel*, cert. granted, —— U.S. ——, 120 S.Ct. 390, 145 L.Ed.2d 288, (1999), might effectively overturn *Soto* and *Thomas* and thereby call into doubt our jurisdiction over Lucidore's appeal.[9] We disagree. *Slack* involves an appeal from the Ninth Circuit's denial of a petitioner's application for a certificate of probable cause (the precursor, before enactment of AEDPA, to a COA). Accordingly, even if the Supreme Court were to hold, as the State suggests, that the denial of a certificate was appropriate in *Slack* because there had been no substantial showing that Slack's constitutional rights had been denied, it is not clear that such a decision would overrule the presumptive legitimacy, under *Soto*, of a certificate of appealability *that already has been issued*.

In any event, even if the Supreme Court were to articulate in *Slack* a rule that had the effect of overturning *Soto* and permitting the invalidation of certificates of appealability once issued, the COA granted in the instant case would survive. As noted above, the "substantial showing" requirement for granting a COA is satisfied if the issues involved in a petition are debatable among jurists of reason, could be resolved in a different manner, or are adequate to deserve encouragement to proceed further. *See Barefoot*, 463 U.S. at 893 n. 4, 103 S.Ct. 3383. Here, the issues involved in Lucidore's habeas petition— *i.e.*, whether AEDPA's statute of limita-

*Slack* ruled that the petition in question was successive, *see* Brief for Petitioner, 1999 WL 297747, at *8, *Slack* (No. 98–6322), and the Ninth Circuit refused to grant petitioner a COA, *see id.* The Supreme Court granted certiorari and, after hearing oral argument, issued an order directing rebriefing on two issues: (1) whether AEDPA applied to the proceedings and (2) if so, whether a COA could have been issued under § 2253. *See* 120 S.Ct. 390 (1999).

tions violates the Suspension Clause and whether, in order to survive a constitutional challenge, AEDPA must be read to include an "actual innocence" exception—are "debatable among jurists of reason" as well as "adequate to deserve encouragement to proceed further." Notably, in *Triestman v. United States*, 124 F.3d 361, 378–79 (2d Cir.1997), we observed, without deciding the issue, that denial under AEDPA of collateral review to a party claiming actual innocence could raise serious Eighth Amendment and due process questions. Similarly, in *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.1998), the Tenth Circuit suggested that where a constitutional violation results in the conviction of someone who is actually innocent, AEDPA's limitations period might raise serious constitutional questions. In *In re Dorsainvil*, 119 F.3d 245, 248 (3d Cir.1997), moreover, the Third Circuit noted that "[w]ere no other avenue of judicial review available for a party who claims that s/he is factually or legally innocent as a result of a previously unavailable statutory interpretation, we would be faced with a thorny constitutional issue." In citing these cases, we do not suggest, in any way, that a specter of unconstitutionality necessarily is haunting AEDPA's statute of limitations—merely that this is an important question that the courts have not yet addressed, much less resolved, and that given the unsettled nature of these issues, the certificate of appealability issued in this case was justified.

### III.

As Lucidore himself concedes, even under the most generous construction of 28 U.S.C. § 2244(d)(1), his one-year limitations period began to run on April 30, 1997, the date by which he both possessed the Clarkstown police report and had reason to believe that the New York City Police Department and the prosecution had possessed it at the time the prosecution filled out the Voluntary Disclosure Form and responded to Lucidore's "omnibus" discovery request.[10] Inasmuch as Lucidore filed his habeas petition on April 22, 1999, more than one year later, it was untimely under AEDPA.

■ Lucidore nevertheless challenges the dismissal of his habeas petition on the grounds that AEDPA's one-year limitations period is a *per se* violation of the Suspension Clause. We are unpersuaded by this facial challenge to AEDPA's statute of limitations. We settled this question in *Rodriguez v. Artuz*, 161 F.3d 763, 764 (2d Cir.1998) (per curiam), *aff'g on opinion below* 990 F.Supp. 275 (S.D.N.Y. 1998), adopting the District Court's reasoning that because AEDPA's one-year statute of limitations leaves habeas petitioners with some reasonable opportunity to have their claims heard on the merits, the limitations period does not render the habeas remedy "inadequate or ineffective to test the legality of detention," and therefore does not *per se* constitute an unconstitutional suspension of the writ of habeas corpus. 990 F.Supp. at 280–82 (citing *Swain v. Pressley*, 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977)).

■ Lucidore also contends that in order to survive various constitutional challenges, AEDPA's limitations period must be read to include, by implication, an exception for cases in which a petitioner is actually innocent. In evaluating this claim, we are mindful of the longstanding principle of constitutional interpretation that courts may not pass upon the validity of a federal statute "at the instance of one who fails to show that he is injured by the statute's operation." *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 583 n. 22, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979)

---

**10.** We note that the New York State Supreme Court, in adjudicating Lucidore's § 440.10 motion, found that the Clarkstown police report "was in the prosecution's possession, was specifically requested by the defense, and was not turned over to the defense." *See Lucidore*, 1999 WL 566362, at *3. The State has not contested these findings in this habeas action.

(quoting *Rescue Army v. Municipal Court,* 331 U.S. 549, 569 & n. 31, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947) (quoting *Ashwander v. TVA,* 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring))). Thus, unless Lucidore can demonstrate that he is actually innocent of the charges to which he pleaded guilty, we need not reach the question of whether the Constitution requires an "actual innocence" exception to AEDPA's statute of limitations.

 In order to demonstrate actual innocence in a so-called collateral proceeding, a petitioner must present "new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 299, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Where the defendant pleaded guilty (as in the instant case), and therefore did not have the evidence in his case evaluated by a jury, the standard nevertheless remains the same—*i.e.,* the petitioner still must show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks omitted); *see also Rosario v. United States,* 164 F.3d 729, 733 (2d Cir.1998) (applying actual innocence standard of reasonable juror to guilty plea, citing *Bousley* ), *cert. denied,* —— U.S. ——, 119 S.Ct. 2355, 144 L.Ed.2d 250 (1999).

In this case, Lucidore himself admitted, in his statement to the New York City police, the sodomy to which he pleaded guilty. In addition, while it is true that the Clarkstown police report—the new evidence on which Lucidore bases his actual innocence claim—contains the victim's statement that no "rape" occurred, it also reflects her statement that Lucidore sodomized her. Further, Lucidore made several inculpatory statements in his recorded conversations with the victim (*e.g.,*

"what I did was horrible" and "I feel a combination of shame, guilt and puzzlement"). In light of this evidence, the District Court properly concluded that Lucidore failed to show that it was "more likely than not that no reasonable juror would have found [him] guilty [of sodomy] beyond a reasonable doubt." Because we agree with the District Court that Lucidore thus failed to demonstrate actual innocence, we do not reach the question of whether the Suspension Clause of the Constitution requires that we read an "actual innocence" exception into AEDPA's statute of limitations.

## IV.

For the reasons stated above, the judgment of the District Court is affirmed.