■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW ALEXANDER, Appellant.—Judgment, Supreme Court, Bronx County (Lawrence Bernstein, J.), rendered June 15, 1988, which convicted defendant of murder in the second degree and robbery in the first degree and sentenced him to concurrent prison terms of 20 years to life and 8⅓ to 25 years, respectively, is affirmed.

While the dissent begins its analysis questioning whether the evidence in this case is sufficient to support defendant's conviction of robbery in the first degree and felony murder, it ultimately concludes (at 512) that "proof of the defendant's guilt may have been legally sufficient to sustain both the robbery and murder convictions".

As set forth in detail in the dissent, the evidence in this case, viewed in a light most favorable to the People, forcefully and overwhelmingly establishes defendant's guilt of both robbery and felony murder. In a circumstantial evidence case, for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude to a moral certainty every reasonable hypothesis of innocence *(e.g., People v Benzinger,* 36 NY2d 29, 32). Here, the proof meets that exacting standard.

Beverly Eason testified that she planned the robbery with the defendant, and that on the night in question she and defendant went to the victim's social club, with defendant waiting outside while Eason entered the club to make certain that the intended victim was alone and unarmed. Upon ascer-

taining such to be the case, Eason left the social club and signaled these facts to the defendant, after which she returned to her apartment located one block away.

The other key prosecution witness, Ertha Lee, who lived near the social club, testified that while she was returning home at approximately 11:15 that evening, she ran into the victim, with whom she was acquainted, in front of the social club and spoke to him for a few minutes. Continuing home, she noticed defendant, also known to her, standing on a stoop and wearing a plaid lumber jacket. Shortly thereafter, while sitting at home near her window which overlooked the social club, Ms. Lee saw defendant enter the club alone. A few minutes later, she saw defendant, still alone, but without his jacket, leave the club while walking fast. Ms. Lee recalled that the door to the social club remained open when defendant left, a fact she particularly noted because that door was not usually open. A few minutes after defendant's departure, the victim's brother arrived at the social club and immediately called out for someone. Shortly thereafter the police arrived.

The police officers, summoned by the victim's brother, testified that when they arrived at the social club, they found the victim dead from stab wounds in his chest, with his pockets turned inside out. No drugs or money were found either on the person of the deceased or in the club, but various drug paraphernalia were present. A photo of the crime scene showed a plaid lumber jacket lying next to the victim's body.

Eason further testified that on the following day she went to the defendant's apartment and asked him why he had killed the deceased. Defendant laughed, denied the murder, and stated that the "next guy" did it. Defendant admitted that he robbed the victim of money and drugs and stated that no one had seen him. He threatened to shoot Eason and her family if she said anything.

As the dissent recognizes, upon viewing this evidence in a light most favorable to the People, the guilt of the defendant flowed naturally from the facts' proved and was consistent with them, and when viewed as a whole these facts excluded to a moral certainty every reasonable hypothesis of defendant's innocence. Indeed, it has often been stated that circumstantial evidence is frequently more reliable and stronger than direct proof. (E.g., People v Benzinger, supra; People v Gallo, 75 AD2d 148.) Here, defendant's conviction was clearly proven beyond a reasonable doubt by legally sufficient evidence and should be sustained.

The dissent's contention that the conviction should be reversed because of the court's failure to deliver a circumstantial evidence charge is not persuasive. Despite the express opportunity to do so, defendant failed to make a request for such a charge. Moreover, by reason of defendant's failure to object to the court's omission of this charge, the issue is not preserved for appellate review even if it is assumed that this is a wholly circumstantial evidence case. (CPL 470.05 [2]; *People v Dawson,* 115 AD2d 612.) While the dissent points to one case where such an error was reviewed under the Appellate Division's "interest of justice" scope of review (CPL 470.15 [6]; *People v Tsotselashvili,* 135 AD2d 759), interest of justice review is not mandated, especially where, as here, the evidence of defendant's guilt is overwhelming.

The reason for heightened scrutiny in a circumstantial evidence case is the danger that a jury might fall into "logical gaps—that is, subjective inferential links based on probabilities of low grade or insufficient degree—which, if undetected, elevate coincidence and, therefore, suspicion into permissible inference." *(People v Cleague,* 22 NY2d 363, 367.) Here, there is no such danger. The evidence, taken as a whole, has no such logical gaps, and the failure to give a circumstantial evidence charge did not prejudice the defendant.

In any event, the evidence here was not entirely circumstantial. Defendant's statements on the following day to his accomplice Eason amounted to a confession. A confession is a voluntary express acknowledgment by the accused that he engaged in conduct which constitutes the crime charged, or an essential part of it. *(People v Edwards,* 147 AD2d 586, 587, citing Richardson, Evidence § 540 [Prince 10th ed].) Unlike *People v Sanchez* (61 NY2d 1022), where defendant's admission merely placed him at the crime scene and the court held that the failure to grant a circumstantial evidence charge *requested by the defendant* was reversible error, here defendant's confession did more than place him at the scene of the crime. Defendant confessed to committing the robbery, which occurred simultaneously with the murder and which was an essential element of the felony murder charge.

In *People v Rodriquez* (134 AD2d 153), relied on by the dissent, there was not only a specific request for a circumstantial evidence charge, but there was also an absence of any direct evidence that defendant had entered the store that he was charged with burglarizing. Here, there was direct evidence, in the testimony of Ms. Lee, that defendant entered

and exited the social club at the time the robbery and murder were committed.

Accordingly, the judgment should be affirmed. Concur— Kupferman, J. P., Ross, Carro and Ellerin, JJ.

Smith, J., dissents in a memorandum as follows: the judgment of conviction of murder in the second degree should be reversed on the law and a new trial ordered because of the absence of a charge on circumstantial evidence.

CPL 470.15 (4) (b) deems allegations as to the insufficiency of the evidence to be reviewable by this court "upon the law" even in the absence of a specific objection at the trial court. *(See, People v Kilpatrick,* 143 AD2d 1, 3 [1st Dept 1988].) Thus, the defendant's contention that the circumstantial evidence was insufficient to support his conviction of robbery in the first degree and murder in the second degree is reviewable by this court upon the law. (CPL 470.15.)

Viewed in the light most favorable to the People *(People v Montanez,* 41 NY2d 53, 57 [1976]), the trial evidence disclosed that Beverly Eason and the defendant had devised a scheme to rob the deceased, Larry Granum, a drug dealer who along with his brother sold crack out of a social club on Boston Post Road in Bronx County. Eason, an admitted drug addict who also sold drugs for the Granums, was angry because the brothers owed her $1,000 in drug sale commissions which they refused to pay. The defendant agreed to rob Larry and to equally divide the proceeds of the robbery with Eason.

Eason testified that on February 26, 1986 at about 11:30 P.M., she and the defendant went to the social club where, as arranged, the defendant waited outside while Eason entered the club in order to determine whether Larry was alone. Eason saw Larry in the club and observed money and vials of crack lying atop a bar. She noticed that Larry was not wearing a gun as he sometimes did. She looked around and saw that no one else was in the club. Eason remained in the club for about 10 minutes speaking with the deceased and purchasing crack from him. She wrote her cousin's telephone number on a piece of paper and left it with the deceased. Upon exiting the club, Eason nodded to the defendant, thereby signaling that Larry was alone. The defendant at that time was standing near another man but she did not know whether they were together. Eason returned to her apartment one block away. Less than 40 minutes later she heard police sirens and thereafter learned from the victim's brother about the murder. The following morning she went to the defendant's

apartment and asked him why he had killed Larry Granum. According to Eason the defendant laughed, denied the murder, stated that "the next guy" did it, but refused to say who this other person was. The defendant admitted that he had robbed Larry Granum of money and crack and stated that no one had seen him. He threatened to shoot Eason's family if she revealed anything. Eason did not want nor did she receive a share of the proceeds.

Prior to trial Eason pleaded guilty to robbery, first degree, as an accomplice to the defendant. At the time of her testimony, she was awaiting sentencing upon the prosecutor's promise that the sentencing court would be advised of her cooperation.

A second prosecution witness, Ertha Lee, lived one block from the club and was acquainted with the parties. While walking home at about 11:15 P.M., she noticed that the defendant was standing in the immediate area of the club and that he was wearing a plaid lumber jacket. Minutes later from her apartment window, she observed the defendant enter the club by himself. He quickly exited a few minutes later, by himself and with nothing in his hands. She could not recall whether he was wearing the plaid jacket. He left open the door to the club which was usually kept closed. A few minutes later she observed the victim's brother enter and quickly exit the club, calling to someone. The police arrived shortly thereafter.

The police officers, who were hailed by the victim's brother, arrived at the scene to find Larry Granum lying on the floor with stab wounds in his chest, with his pockets turned inside out and with the piece of paper containing the telephone number of Eason's cousin on his chest. A scale, heating pot and crack vials, but no drugs or money, were found in the club. A plaid jacket also was found in the club. No weapon was discovered.

It cannot be said based upon the evidence, when viewed in the light most favorable to the People, that the conclusion of the defendant's guilt was inconsistent with and did not flow naturally from the facts proven, or that those facts when viewed as a whole did not exclude " 'to a moral certainty' " every conclusion other than guilt. *(People v Kennedy,* 47 NY2d 196, 202 [1979].) Those facts include: Eason's testimony concerning the scheme to rob the deceased; the defendant's admission as to the robbery and other statements to Eason; the discovery of the deceased within a few minutes after the defendant left the club; the discovery of the defendant's

jacket; and testimony that no one other than the victim was seen in the club at the time that the defendant entered.

While proof of the defendant's guilt may have been legally sufficient to sustain both the robbery and murder convictions, the evidence against him was far from overwhelming. No one saw the actual stabbing. The defendant was standing next to an unidentified person when Eason left the bar prior to the murder. Although defendant laughed when Eason asked him why he killed the deceased, he did deny the murder.

CPL 300.10 (2) mandates that the Trial Judge instruct the jury as to the "material legal principles applicable to the particular case".

Here, the People's case rests entirely upon circumstantial evidence. The lack of a circumstantial evidence charge, even in the absence of a request by the defendant, was so prejudicial an error as to require reversal and a new trial. (CPL 470.15 [6]; *People v Tsotselashvili,* 135 AD2d 759, 761 [2d Dept 1987] [robbery conviction reversed and a new trial ordered even though no request for a circumstantial evidence charge made]; *see also,* the following cases involving the refusal to give or an erroneous circumstantial evidence charge: *People v Sanchez,* 61 NY2d 1022 [1984]; *People v Rodriquez,* 134 AD2d 153 [1st Dept 1987]; *People v McLean,* 123 AD2d 888 [2d Dept 1986].)