**Matthew ALEXANDER, Petitioner,**

v.

**John KEANE, Superintendent, Sing Sing Correctional Facility, Respondent.**

No. 97 Civ. 2526(SS).

United States District Court,
S.D. New York.

Jan. 14, 1998.

Opinion Denying Reconsideration
March 5, 1998.

Matthew Alexander, pro se.

Robert T. Johnson, District Attorney, Bronx County, New York City, Nancy D. Killian, New York City, for Respondent.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Respondent moves to dismiss this habeas petition on the ground that the claims asserted by petitioner are barred by the one-year limitations period of § 101 of the Antiterrorism and Effective Death Penalty Act ("AED-

PA"), Pub.L. 104–132, 110 Stat. 1217 (April 24, 1996), codified at 28 U.S.C. § 2244(d). The petitioner filed this petition approximately eleven months after the effective date of the AEDPA, and over six years after exhausting state direct review of his conviction. For the reasons to be discussed, I grant respondent's motion to dismiss the habeas petition as untimely.

### BACKGROUND

Petitioner was convicted on June 15, 1988, following a jury trial in New York State Supreme Court, Bronx County, of Murder in the Second Degree (N.Y.Penal Law § 125.25(3)) and Robbery in the First Degree (N.Y.Penal Law § 160.15(3)). Petitioner was sentenced to an indeterminate prison term of twenty years to life on the murder count and a term of from eight and one-third to twenty five years on the robbery count. Petitioner is currently incarcerated at Sing Sing Correctional Facility

Petitioner appealed his conviction to the Supreme Court, Appellate Division, First Department, on the grounds that 1) the prosecution failed to establish his guilt beyond a reasonable doubt, 2) the evidence did not corroborate the accomplice testimony, 3) the trial court erred in failing to give a circumstantial evidence charge, and 4) the trial court's sentence was excessive. On August 10, 1989, the Appellate Division affirmed petitioner's conviction. *See People v. Alexander*, 153 A.D.2d 507, 544 N.Y.S.2d 595 (1st Dep't 1989). On May 3, 1990, the New York State Court of Appeals affirmed. *See People v. Alexander*, 75 N.Y.2d 979, 556 N.Y.S.2d 508, 555 N.E.2d 905 (1990). Petitioner did not file for certiorari with the United States Supreme Court.

On May 11, 1991 petitioner filed a motion in the trial court, pursuant to N.Y.Crim.Proc. Law § 440.10, to vacate the conviction on the grounds of ineffective assistance of trial counsel; this motion was denied on July 16, 1991, and the Appellate Division denied leave to appeal on September 26, 1991. *See People v. Alexander*, No. M–4181, 1991 N.Y.App. Div. Lexis 12470 (1st Dep't Sept. 26, 1991). Finally, on March 11, 1992, petitioner filed in

the Appellate Division for a writ of error coram nobis, raising the same grounds as his unsuccessful § 440.10 motion. The petition was denied on May 14, 1992, *see People v. Alexander,* 183 A.D.2d 1110, 592 N.Y.S.2d 542 (1st Dep't 1992), and the Court of Appeals denied leave to appeal on August 5, 1992. *See People v. Alexander,* 80 N.Y.2d 900, 588 N.Y.S.2d 826, 602 N.E.2d 234 (1992).

On March 31, 1997, this Court received the instant petition, dated March 21, 1997, for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent submitted its motion to dismiss on July 29, 1997, and petitioner opposed the motion on September 18, 1997. Respondent submitted a reply on November 6, 1997, and the petitioner submitted a sur-reply on November 9, 1997.

### DISCUSSION

■ Petitioner filed this petition after April 24, 1996, the effective date of the AEDPA. The AEDPA amended the habeas corpus statute to require that habeas petitions "be filed no later than one year after the completion of state court review." 28 U.S.C. § 2244(d)(1)(A) (1997). However, "[t]ime during which a properly filed state court application for collateral review is pending is excluded from the one year period." *Reyes v. Keane,* 90 F.3d 676, 679 (2d Cir.1996); *see* 28 U.S.C. § 2244(d)(2). The Second Circuit in *Peterson v. Demskie,* 107 F.3d 92, 93 (2d Cir.1997), recognized that it would be unfair to deny access to the federal courts to prisoners who did not have notice of the new time limits of the AEDPA. Although other circuits have ruled that "habeas petitioners should have a full year after the effective date of the AEDPA to file their petitions in federal district court," *Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996) (en banc), *rev'd on other ground,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *United States v. Simmonds,* 111 F.3d 737 (10th Cir.1997); *Calderon v. United States District Court for Central District of California,* 112 F.3d 386, 389 (9th Cir.1997), this Circuit has held that "a habeas corpus petitioner is entitled to a 'reasonable time' after the effective date of the AEDPA to file a petition." *Peterson,* 107 F.3d at 92. Furthermore, "in circumstances ... where a state prisoner has had several years to contemplate bringing a federal habeas corpus petition, we see no need to accord a full year after the effective date of the AEDPA." *Peterson,* 107 F.3d at 93.

Following *Peterson,* district courts in this circuit have found petitions filed near the end of the year following the enactment of the Act to be untimely. *See Rashid v. Khulmann,* No. 97 Civ. 3037, 1998 U.S. Dist. Lexis ——, at *——, 1998 WL9379, at *2 (S.D.N.Y. Jan. 8, 1998) (collecting cases). The Second Circuit in *Peterson* also cautioned, however, that "we do not think that the alternative of a 'reasonable time' should be applied with undue rigor." *Peterson,* 107 F.3d at 93. Accordingly, courts in this circuit have found petitions filed after the effective date of AEDPA to be timely where the petition was filed well before the conclusion of the one year period following the effective date of the Act or soon after state review concluded. *See id.*

■ The Second Circuit in *Peterson* provided little guidance as to what factors should be considered in determining whether a petition is filed within a reasonable time after the effective date of the AEDPA, except to say that "where a state prisoner has had several years to contemplate bringing a federal habeas corpus petition, we see no need to accord a full year ...." *Peterson,* 107 F.3d at 93. The implication of this statement is that the length of time since conviction is a factor to be considered, with more recently convicted petitioners afforded longer time, perhaps even up to one full year. *See Morillo v. Crinder,* No. 97 Civ. 3194, 1997 U.S. Dist. Lexis 18295, at *5–6, 1997 WL 724656, at *2 (S.D.N.Y. Nov. 18, 1997) (petition filed 350 days after AEDPA timely because, *inter alia,* petitioner who filed 370 days after conviction "did not have years to contemplate bringing his petition"); *Jones v. Artuz,* No. CV 97–2394, 1997 U.S. Dist. Lexis 15581, at *2–3 (E.D.N.Y. Sept. 13, 1997) (petition filed 357 days after AEDPA not untimely where filed only fourteen months after conviction).

■ In addition to this factor, the district courts applying *Peterson* have relied on a

number of common factors in making their analysis: (1) whether the federal petition merely restates claims made to the state courts, and thus does not require extensive additional preparation, *see Avincola v. Stinson,* No. 97 Civ. 1132, 1997 U.S.Dist.Lexis 17078, at *6, 1997 WL 681311, at *2 (S.D.N.Y. Oct. 31, 1997) (petition filed 266 days after AEDPA untimely because, *inter alia,* "[t]he claims raised here are identical to those raised in state court"); *White v. Garvin,* No. 97 Civ. 3244, 1997 U.S.Dist.Lexis 15577, at *5, 1997 WL 626396, at *2 (S.D.N.Y. Oct. 8, 1997) ("Because petitioner raised the same claims in his prior appeals, he did not have to do much, if any, legal research or writing to complete his petition.") (petition filed 341 days after the AEDPA untimely); *Berger v. Stinson,* 977 F.Supp. 243, 245 (W.D.N.Y.1997) ("[I]t is difficult to see why an extended period of time was necessary to prepare and file a habeas corpus petition based on the same facts" as a previous state collateral motion); (2) whether the petitioner is proceeding *pro se* or is represented by counsel, *see Morillo,* 1997 U.S.Dist. Lexis 18295, at *6, 1997 WL 724656, at *2 (filing *pro se* "can substantially increase the time involved in preparation of court documents") (petition timely); *Rivalta v. Artuz,* 1997 U.S. Dist. Lexis 10282, at *2 n. 1, 1997 WL 401819, at *1 n. 1 (S.D.N.Y.1997) (petition filed six months after AEDPA timely "in light of the ... liberal treatment traditionally conferred by this Circuit on *pro se* parties"); *but see Rosa v. Senkowski,* No. 97–2468, 1997 U.S. Dist. Lexis 11177, at * 10–11, 1997 WL 436484, at *4 (S.D.N.Y. Aug. 1, 1997) ("[T]o allow the absence of counsel to extend the filing period would render the 'reasonable' time limitations imposed by the Second Circuit void in the substantial number of *pro se* habeas corpus petitions brought in this district."); (3) whether the petitioner was pursuing state collateral relief during the post-AEDPA period, *see Newton v. Strack,* No. CV 97–2812, 1997 U.S.Dist. Lexis 17511, at *6–7, 1997 WL 752348, at *2 (E.D.N.Y. Oct. 15, 1997); *Johnson v. Kelly,* No. CV 97–1298, 1997 U.S.Dist. Lexis 15580, at *6–7 (E.D.N.Y. Sept. 12, 1997); and (4) the difficulty or complexity of the issues raised by the petition, *see Carmona v. Artuz,* No. 96 Civ. 8045, 1997 U.S.Dist. Lexis 15791, at *15 (S.D.N.Y. Oct. 3, 1997) (magistrate judge report and recommendation). Generally speaking, petitions filed within a month or two of the one-year anniversary of the AEDPA have been presumed untimely absent compelling explanation. *See Pacheco v. Artuz,* No. 97 Civ. 3171, 1997 U.S. Dist. Lexis, at *5, 1997 WL 724774, at *2 (S.D.N.Y. Nov. 17, 1997); *Garcia v. New York State Dep't of Correctional Services,* No. 97 Civ. 3867, 1997 U.S.Dist. Lexis 17079, at *7, 1997 WL 681313, at *2 (S.D.N.Y. Oct. 28, 1997).

■■■■ In this case, petitioner's application is not timely. The petition was filed, at the earliest, on March 21, 1997 [1]—almost eleven months after the effective date of the AEDPA, and over six years after his conviction had become final.[2] The claims raised in this petition are essentially the same as petitioner raised in his state court proceedings. Petitioner is not raising any new claims of unusual difficulty or magnitude. Petitioner offers no compelling explanation as to why the petition could not have been filed much earlier.

---

**1.** The timeliness of a prisoner filing is measured from the date the papers were given to prison authorities for mailing. *See Peterson,* 107 F.3d at 93.

**2.** Alexander's conviction was affirmed by the New York Court of Appeals on May 3, 1990. Adding the 90–day period during which a petition for certiorari could have been filed, *see* Sup. Ct.R. 13, the conviction became final on August 1, 1990. *See & 28 U.S.C. § 2244(d)(1)(A)* (for AEDPA statute of limitations, conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review"), *cf. Caspari v. Bohlen,* 510 U.S. 383, 114 S.Ct. 948, 953–54, 127 L.Ed.2d 236 (1994) (for *Teague* retroactivity analysis, state conviction becomes final "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied").

Although not necessary for the disposition of this case, the Court rejects the respondent's argument that the statute of limitations begins to run from the time the Court of Appeals affirmed the conviction without adding the ninety days in which a petition for certiorari could have been filed. *See Albert v. Strack,* No. 97 Civ. 2978, 1998 U.S.Dist. Lexis ——, at *—— n. 2, 1998 WL 9382, at *4 n. 2 (S.D.N.Y. Jan. 13, 1998).

The petition is therefore untimely under *Peterson.*

Petitioner's arguments that the AEDPA statute of limitations should not be applied retroactively have been addressed by the Second Circuit in *Peterson* and in *Reyes v. Keane,* 90 F.3d 676 (2d Cir.1996), and are therefore foreclosed. To the extent that petitioner's arguments raise a claim under the Ex Post Facto Clause, U.S. Const. art I., § 9, cl. 3, this Court addressed that claim in a recent opinion, *see Rashid,* 1998 U.S. Dist. Lexis ——, at * , 1998 WL 9379, at *2, and rejected it for essentially the reason that the AEDPA statute of limitations does not " 'retroactively punish[ ] as a crime an act previously committed, which was innocent when done,' 'make more burdensome the punishment for a crime, after its commission,' or 'deprive[ ] one charged with crime of any defense available according to law at the time when the act was committed.' " *Doe v. Pataki,* 120 F.3d 1263, 1272 (2d Cir.1997) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)).

Likewise, petitioner's argument that the respondent's motion to dismiss is actually raised under Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), and that prejudice must therefore be shown, is incorrect. The respondent is not invoking Habeas Rule 9(a), but rather 28 U.S.C. § 2244(d). There is no requirement of prejudice in the AEDPA statute of limitations.

In *Rosa v. Senkowski,* No. 97 Civ. 2468, 1997 U.S.Dist. Lexis 11177, 1997 WL 436484 (S.D.N.Y. Aug. 1, 1997), *certified for interlocutory appeal,* 1997 U.S.Dist. Lexis 18310, 1997 WL 724559 (S.D.N.Y. Nov. 19, 1997), *appeal docketed,* No. 97–2974 (2d Cir. Dec. 31, 1997), Judge Robert J. Sweet refused to dismiss a petition that was time-barred under *Peterson* on grounds that the statute of limitations in the AEDPA violates the Suspension Clause, *see* U.S. Const. art. I, § 9, cl. 2, and the Due Process Clause of the Fourteenth Amendment, *see* U.S. Const. amend. XIV, § 1. *See also Montalvo v. Portuondo,* No. 97 Civ. 3336, U.S.Dist. Lexis 19288, 1997 WL 752728 (S.D.N.Y. Dec.4, 1997) (Sweet, J.) (reaffirming *Rosa* holding).

In a recent opinion, this Court declined to follow Judge Sweet's holding. *See Rodriguez v. Artuz,* 990 F.Supp. 275, 277 (S.D.N.Y. 1998).

In *Rodriguez,* this Court stated that "at least where no claim of actual or legal innocence has been raised, as long as the procedural limits on habeas leave petitioners with some reasonable opportunity to have their claims heard on the merits, the limits do not render habeas inadequate or ineffective to test the legality of detention and, therefore, do not constitute a suspension of the writ in violation of Article I of the United States Constitution." *Id.* Furthermore, this Court held that in general *Peterson* afforded petitioners such a reasonable opportunity. *Id.*

In *Rodriguez,* however, this Court did not need to pass upon the question of whether a claim of "actual innocence" could override the AEDPA's statute of limitations—or, more precisely, whether the dismissal of a claim of actual innocence as time-barred would be a violation of the Suspension Clause—because no claim of actual innocence was raised in that case, nor did it appear from the face of the petition that the claims Rodriguez raised were sufficient in any case to make such a claim. The petitioner here, however, does appear to assert such a claim. *See* Pet. Mem. in Opp., at 18–19 ("This petitioner is innocent of the crime in which he is presently unlawfully imprisoned in violation of his constitutional rights.... [T]he state seeks to convince this Court to merely dismiss this action as a means of dispensing with justice. This is not what Congress intended when drafting of federal habeas review.... Nor would the framers of the United States Constitution sanction the outright summary dismissal of this petitioner's cause...."). While not expressly stating that the Suspension Clause requires an actual innocence exception to a statute of limitations, this Court believes that a fair reading of petitioner's argument, construed liberally as required when a *pro se* petitioner is involved, requires this Court to more fully explore the issue it left open in *Rodriguez.*

■ "Actual innocence" in habeas jurisprudence refers to a means by which petitioners can avoid certain procedural bars to

having their habeas petitions considered on the merits. As described by the Supreme Court, the type of actual innocence claim asserted by petitioner in this case "is 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup v. Delo,* 513 U.S. 298, 314, 115 S.Ct. 851, 861, 130 L.Ed.2d 808 (1995) (quoting *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993)).[3] The Court has usually allowed actual innocence to serve as a substitute for showing "cause and prejudice," the usual standard for overcoming procedural bars in habeas cases. *See Schlup,* 513 U.S. at 314, 115 S.Ct. at 861. The availability of the actual innocence gateway has been reiterated in cases where petitions would be barred for state procedural defaults, *see Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); or where they would be barred as abusive, *see McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); or where they would be barred as successive, *see Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2617, 91 L.Ed.2d 364 (1986) (plurality opinion); *id.* at 471 n. 5, 106 S.Ct. at 2636 n. 5 (Brennan, J., dissenting); *id.* at 476, 106 S.Ct. at 2639 (Stevens, J., dissenting). In *Schlup,* the Court simply described the petitioner as facing "various procedural bars" to which the actual innocence exception would apply, which at least suggests that *any* procedural bar may be overcome by meeting the actual innocence test.

However, the Supreme Court has never addressed whether actual innocence (or even cause and prejudice) is available to overcome the procedural bar of a statute of limitations,

because prior to the enactment of the AED-PA there was no statute of limitations affecting habeas petitions. Moreover, the Supreme Court has never had to address whether the actual innocence exception is constitutionally required, because it has always been applied either to overcome procedural hurdles of the Court's own making, *see, e.g., Coleman,* 501 U.S. at 729–32, 111 S.Ct. at 2554–55 (procedural default rules created by Court in interests of comity and federalism); or as a means of giving content to a discretionary power vested in the courts by statute, *see, e.g., Kuhlmann,* 477 U.S. at 448–52, 106 S.Ct. at 2624–26 (under version of 28 U.S.C. § 2244(b) then in effect, courts "need not entertain" successive or abusive petitions; "permissive language" gives court discretion to consider claims of innocence). Prior to the AEDPA, there had never been a provision in the habeas statutes which strictly prevented a court from issuing the writ on behalf of a person "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), except for the provision that required exhaustion of remedies, *see* 28 U.S.C. § 2254(b) ("An application for a writ of habeas corpus ... *shall not be granted* unless it appears that the applicant has exhausted the remedies available in the courts of the state....") (emphasis added). Even then, this provision only postponed the possibility of federal relief. The Supreme Court has always been able to fit an exception for actual innocence comfortably into the statutes, and thus the constitutional nature of the exception has never been squarely presented.

Similarly, the Second Circuit, in the recent decision of *Triestman v. United States,* 124 F.3d 361 (2d Cir.1997), was able to avoid directly addressing the issue of whether federal habeas must be available, at least at some point,[4] to adjudicate a claim of actual

---

3. In *Herrera,* the Supreme Court was faced with a claim that execution of an actually innocent person would in itself be unconstitutional—i.e., even if no constitutional error infected the adjudication of his guilt. Petitioner's claim here is not a *Herrera* claim, but rather, as in *Schlup,* an attempt to have the Court look past a procedural bar to reach the merits of his claims of constitutional errors at trial.

4. *Triestman* involved a petitioner who was attempting to file a second motion under 28 U.S.C. § 2255, raising the claim that his 1992 plea to using a firearm in connection with a drug trafficking offense, *see* 18 U.S.C. § 924(c), should be overturned because the Supreme Court's subsequent decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), made it clear that his conduct did not violate § 924(c) and that therefore he was

innocence, because the language of 28 U.S.C. § 2255 contains a "safety valve,"—namely, that the writ of habeas corpus under 28 U.S.C. § 2241 is still available to federal prisoners if "the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C. § 2255. By holding that the procedural bars on Triestman's claim rendered § 2255 "inadequate and ineffective," and that therefore habeas corpus relief under § 2241, to which the gatekeeping procedures do not apply, remained open to him, the Second Circuit was able to avoid directly addressing the extent to which federal habeas is constitutionally required. *See Triestman*, 124 F.3d at 380.

For purposes of this petition, however, what *Triestman* does confirm is that procedurally barring a claim of actual innocence raises serious constitutional issues. *See id.* at 378–79.[5] Moreover, *Triestman* also confirms that the concern that habeas be avail-

able to hear claims of actual innocence is not necessarily limited to capital cases, because Triestman was not under a sentence of death for his crime. *See Triestman*, 124 F.3d at 379 (noting "the distinct possibility that the continued incarceration of an innocent person violates the Eighth Amendment"); *see also Borrego v. United States*, 975 F.Supp. 520, 525 (S.D.N.Y.1997) (actual innocence exception extends to noncapital sentencing issues).

It must be noted, however, that *Triestman* differs from the instant case in a potentially significant way. The *Triestman* court found that Triestman "could not have raised his claim of innocence ... in an effective fashion at an earlier time." *Triestman*, 124 F.3d at 379. The petitioner here, however, is not in such a situation—he does not rely on any newly discovered evidence or new legal rulings, and this Court's finding that his filing was unreasonable under *Peterson* virtually forecloses a finding that he did not have sufficient opportunity to raise his claim. The

actually innocent of the offense. The *Triestman* court first found that the "gatekeeping" provisions of the AEDPA, under which the Court of Appeals may authorize a second § 2255 motion only if there is newly discovered evidence going to actual innocence or a new Supreme Court rule of constitutional law, *see* 28 U.S.C. § 2255, barred Triestman from filing his § 2255 motion. *See Triestman*, 124 F.3d at 372. However, because Triestman had a petition for certiorari pending in the Supreme Court at the time *Bailey* was decided, and because the Supreme Court denied certiorari only two days before the AEDPA took effect, the *Triestman* court held that, "as a practical matter, [Triestman] would not have been able to raise this fundamental claim of actual innocence any sooner." *Id.* at 369.

5. The *Triestman* court stated only that serious constitutional issues arose under the Eighth Amendment and the Fifth Amendment Due Process clauses, and specifically declined to address whether the barring of an actual innocence claim raised issues under the Suspension Clause serious enough to render § 2255 inadequate and ineffective. *See Triestman*, 124 F.3d at 378 n. 21. The court's reasoning for differentiating between Suspension Clause and the Eighth Amendment and Due Process Clauses stemmed from the question of whether the Suspension Clause protected the writ "as it exists today, rather than the very limited habeas jurisdiction that existed at the time of the ratification of the Constitution." *Id.* As this Court did in *Rodriguez*, and as the Supreme Court did in *Felker v. Turpin*, 518 U.S. 651, ——, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996), there is no need to address this issue

because this Court finds no violation in any case. This issue to one side, then, this Court believes that the concerns raised by *Triestman* under the Fifth and Eighth Amendments are equally applicable to the Suspension Clause.

In fact, it is probable that *only* the Suspension Clause is implicated (if at all); note that *Triestman* concerned federal relief for federal prisoners—hence, the court was dealing with a situation in which the federal government had imposed punishment on an (allegedly) innocent person and was denying access to its own courts for relief. It is not clear how either the Eighth Amendment or the Fifth Amendment (or, for that matter, the Fourteenth Amendment Due Process Clause) applies when, as here, a *state* is imposing the punishment but it is access to the *federal* courts that is sought. For example, assuming (under *Triestman*'s analysis) that the state incarceration of an innocent person raises significant constitutional concerns, those would not be issues under the Eighth Amendment itself but only as it is incorporated through the Fourteenth Amendment; yet, it is difficult to see how the Fourteenth Amendment, directed as it is against the states, can serve to restrict Congress's ability to limit access to federal habeas. It is only the Suspension Clause that could possibly cover such a situation, and it is for that reason that this Court considers the actual innocence issue raised by the instant petition to be a concern of the Suspension Clause and not, as in *Triestman*, the Fifth and Eighth Amendments. *See Martinez–Villareal v. Stewart*, 118 F.3d 628, 632 (9th Cir.), *cert. granted*, —— U.S. ——, 118 S.Ct. 294, 139 L.Ed.2d 226 (1997).

issue before this Court is therefore slightly different from *Triestman:* not, as in that case, whether the Constitution requires Congress to provide (at least) one meaningful opportunity for federal review of an innocence claim, but whether the federal habeas doors must, in effect, remain perpetually open to such a claim, at least until the claim has been adjudicated on the merits. Although *Triestman* did not address this issue, this Court believes that the concerns of that court, as well as a consistent line of Supreme Court jurisprudence, also indicate that procedural bars to hearing actual innocence claims—even if there was some prior opportunity (but not a prior federal rejection of the merits)—raise serious constitutional concerns.

The *Triestman* court noted, for instance, that "[i]t is certainly arguable ... that the continued imprisonment of an actually innocent person would violate just such a fundamental principle." *Id.* It also noted that "serious due process questions would arise if Congress were to close off all avenues of redress in such cases, *especially* when the prisoner could not have raised his claim of innocence ... in an effective fashion at an earlier time." *Id.* (emphasis added). The fair implication of this last statement is that "such cases" refers to more than just those in which the actual innocence claim could not have been effectively raised earlier.

This is confirmed by the Supreme Court's decision in *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In *Carrier,* the Court held that, although failure to raise a claim on direct appeal constituted procedural default which would normally bar federal habeas review, the default could be overcome by a showing of "cause and prejudice." The Court specifically noted that "a showing that the factual or legal basis for a claim was not reasonably available to counsel ... would constitute cause ..." and also that "[i]neffective assistance of counsel ... is cause for a procedural default." *Id.* at 488, 106 S.Ct. at 2645. The Court then went on to state the following:

"[i]n appropriate cases" the principles of comity and finality that inform the concepts of cause and prejudice "must yield to the imperative of correcting a fundamentally unjust incarceration." We remain confident that, for the most part, "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

*Id.* at 495–96, 106 S.Ct. at 2649 (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982). Any case in which a claim of actual innocence could not have been raised earlier would obviously meet the "cause" standard set out above (factual or legal basis not reasonably available). *Cf. Triestman,* 124 F.3d at 367–69 (prior to AEDPA, district courts would have been able to reach merits of claim that could not have been raised earlier but was now viable due to intervening change in law). Clearly, this does cover most actual innocence claims, because they are normally based on new evidence that was either unavailable earlier or was omitted due to ineffective assistance of counsel. However, that the *Carrier* Court felt this did not exhaust the universe of cognizable actual innocence claims strongly suggests that the prior availability of an actual innocence claim does not necessarily remove it from the universe of "fundamentally unjust incarcerations ." *See also Kuhlmann v. Wilson,* 477 U.S. 436, 452, 106 S.Ct. 2616, 2626, 91 L.Ed.2d 364 (1986) (plurality opinion) ("Even where ... the many judges who have reviewed the prisoner's claims in several proceedings provided by the State and on his first petition for federal habeas corpus have determined that his trial was free from constitutional error, a prisoner retains a powerful and legitimate interest in obtaining his release from custody if he is innocent of the charge for which he was incarcerated.") (holding that federal habeas court may hear claim previously litigated in federal habeas if prisoner makes a "colorable showing of factual innocence.").

The Supreme Court has long noted that the "concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system." *Schlup*, 513 U.S. at 324, 115 S.Ct. at 866; *see also O'Neal v. McAninch*, 513 U.S. 432, 442, 115 S.Ct. 992, 997, 130 L.Ed.2d 947 (1995) (describing as "basic purpose[ ] underlying the writ" the correction of an error "that risks an unreliable trial outcome and the consequent conviction of an innocent person"). In fact, the Supreme Court has often justified pruning back the scope of federal habeas review by cutting away those aspects which do *not* bear on actual innocence. *See, e.g., Teague v. Lane*, 489 U.S. 288, 312–13, 109 S.Ct. 1060, 1076–77 (1989) (retroactivity on collateral review limited to those new rules of constitutional law which either "place[ ] 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe' or are designed to eliminate 'procedure[s] which create an impermissibly large risk that the innocent will be convicted'") (quoting *Mackey v. United States*, 401 U.S. 667, 672, 91 S.Ct. 1160, 1163, 28 L.Ed.2d 404 (1971) (opinion of Harlan, J.) and *Desist v. United States*, 394 U.S. 244, 262, 89 S.Ct. 1030, 1041, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)); *Kuhlmann*, 477 U.S. at 454, 106 S.Ct. at 2627 (federal court may entertain successive habeas petitions *only* where colorable showing of actual innocence is made); *Stone v. Powell*, 428 U.S. 465, 491 n. 31, 96 S.Ct. 3037, 3051 n. 31, 49 L.Ed.2d 1067 (1976) (Fourth Amendment claims not cognizable in federal habeas because petitioner "is usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration" and does not remove a "safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty").

▇ The point of the above discussion is this: If there is *any* core function of habeas corpus—any constitutionally required minimum below which the scope of federal habeas may not be reduced—it would be to free the innocent person unconstitutionally incarcerated. Thus, the question which began this inquiry—does the Suspension Clause require that an exception for actual innocence be made to the AEDPA statute of limitations?—

translates into the more basic question: Does the Suspension Clause require Congress to provide *any* federal habeas relief for state prisoners *whatsoever?*

▇ This is an extremely difficult question, implicating as it does some of the most fundamental and fiercely contested issues of constitutional law—relations among the three branches of the federal government, relations between the federal and state governments, and the balancing of individual liberty interest against society's need for a criminal justice system that at some point rests in its adjudication of guilt. The Supreme Court itself avoided these questions in *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), when it simply assumed, for purposes of decision, that the Suspension Clause protects the federal writ for state prisoners "as it exists today." *Id.* at 2340. When such momentous issues are involved, particularly where, as here, no clear guidance can be found from higher courts, this Court is mindful of the longstanding maxim of judicial restraint that it is "'our duty to avoid deciding constitutional questions presented unless essential to proper disposition of the case.'" *Dean v. Superintendent, Clinton Correctional Facility*, 93 F.3d 58, 61 (2d Cir.1996) (quoting *Harmon v. Brucker*, 355 U.S. 579, 581, 78 S.Ct. 433, 434–35, 2 L.Ed.2d 503 (1958)). Thus, the Court turns to petitioner Alexander's claims to see whether, assuming an "actual innocence" exception to the statute of limitations exists, he could take advantage of it to have this Court hear his petition on the merits notwithstanding its being time-barred.

This Court is mindful that it is undertaking the difficult task of applying an unclear standard—the colorable factual showing of actual innocence which would be necessary to overcome a statute of limitations. This Court, however, is not without guidance. The Supreme Court has defined two standards for actual innocence in the habeas context, and this Court believes that, because the basic question in all of these cases, including this petition, is the threshold showing necessary to overcome a procedural bar to adjudication

on the merits, one of these two standards is applicable.

In *Carrier*, the Supreme Court defined actual innocence as a showing by an otherwise-barred petitioner that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496, 106 S.Ct. at 2639. Subsequent to *Carrier*, however, in *Sawyer v. Whitley*, 505 U.S. 333, 348, 112 S.Ct. 2514, 2523, 120 L.Ed.2d 269 (1992), the Court held that "actual innocence" in the capital sentencing context required that the petitioner show "by *clear and convincing evidence* that but for constitutional error, no reasonable juror would find him eligible for the death penalty...." *Id.* (emphasis added). No explanation was given for the apparent increase in the burden placed on petitioners. In *Schlup*, the Court clarified its earlier cases, and held that in a habeas petition challenging a conviction, the *Carrier* standard applied, while in a challenge to capital sentencing, the *Sawyer* standard applied. *See Schlup*, 513 U.S. at 323–27, 115 S.Ct. at 865–67.

*Schlup* cited two reasons for distinguishing between the two standards. First, it noted that claims of actual innocence of the crime are much less likely to be successful than a challenge to a capital sentence, and thus "[t]he threat to judicial resources, finality, and comity posed by claims of actual innocence ... is significantly less than that posed by claims relating only to sentencing." *Id.* at 324, 115 S.Ct. at 866. Second, the Court felt that the injustice of executing (or incarcerating) one innocent of the crime is greater than imposing a too-severe sentence upon one who is factually guilty, and therefore "the overriding importance of this greater individual interest merits protection by imposing a somewhat less exacting standard of proof ...." *Id.* at 325, 115 S.Ct. at 866. This reasoning would be no less applicable in overcoming a statute of limitations here than in overcoming the various procedural bars in *Schlup*, and thus this Court will evaluate the instant petition's claims under the *Carrier* standard, as explicated in *Schlup*.

 Under *Schlup*, "the petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. at 867. The Court emphasized that this is a question of *actual* innocence, and thus "the district court is not bound by the rules of admissibility that would govern at trial" but instead "must make its determination ... 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 327–28, 115 S.Ct. at 867 (quoting Henry Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970)).

 The *Schlup* burden, it should be noted, is not whether no reasonable juror *could* find petitioner guilty, and is therefore less than the insufficiency of evidence standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Schlup*, 513 U.S. at 330, 115 S.Ct. at 868. It is, however, a significantly higher burden than showing prejudice, which only requires a reasonable probability that the factfinder would have reasonable doubt, and moreover is evaluated only in light of the evidence that should have properly been before the factfinder. *See id.* at 332–33, 115 S.Ct. at 870 (O'Connor, J., concurring). In order to pass through the actual innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* at 327, 115 S.Ct. at 867.

 The instant petition is not such a case. To begin with, the Court notes the admonition in *Schlup* that "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial." *Id.* at 324, 115 S.Ct. at 865; *see also id.* at 329, 115 S.Ct. at 868 ("a petitioner does not meet the threshold requirement unless he persuades the district court that, *in light of the new evidence*, no juror, acting reasonable, would have voted to find him guilty beyond a reasonable doubt") (emphasis added). This Court does not understand "new" evidence to be limited to evidence that was unavailable at trial, *see id.* at 328, 115 S.Ct. at 867 (court must evaluate

"in light of ... evidence tenably claimed to have been wrongly excluded or to have become available only after the trial"), but that a claim of actual innocence must at least present evidence that the original factfinder did not consider to be cognizable. *Accord Embrey v. Hershberger*, 131 F.3d 739, 1997 U.S.App. Lexis 35624, at *6–9, 1997 WL 773359, at *3–4 (8th Cir.1997) (en banc). Given the probabilistic standard of *Schlup*, a claim without new evidence unseen by the jury, to be successful, would put the court in the position of asserting that none of the jurors acted reasonably. Accordingly, petitioner's claims that the trial evidence was insufficient to convict and of ineffective assistance of counsel on direct appeal will not be considered.

The only claims asserted by petitioner which raise "new evidence" are that (1) the jury should have been allowed to visit the site where a key eyewitness, Ertha Lee, viewed petitioner enter and leave the crime scene, and that this visit would have revealed that it was impossible for the witness to have seen the petitioner, and (2) a prosecution witness, Beverly Eason, testified that she had not been originally charged with the murder for which petitioner was convicted (and was testifying pursuant to a cooperation agreement), and when defense counsel presented records to the contrary and asked the prosecution to stipulate to their accuracy, the prosecutor "merely mouthed the word 'agreed'" rather than "correct the falsity of the trial testimony." Pet.Opp. Mem., at 5. These claims do not come close to meeting the *Schlup* standard.

As to the first claim, the site visit could have at most cast doubt on the credibility of this one witness. As noted by the Appellate Division in Alexander's direct appeal, there was significant other evidence at trial. Eason testified that she planned the robbery which led to the murder along with Alexander, took part making sure the victim was alone and witnessed the petitioner at the crime scene, and that the petitioner confessed the robbery to her the following day. Moreover, in addition to the testimony the petitioner challenged here, Ms. Lee testified that she had witnessed the petitioner near

the crime scene shortly before the crime, wearing a jacket that was similar to one found by the victim's body. *See People v. Alexander*, 153 A.D.2d 507, 507–08, 544 N.Y.S.2d 595, 596–97 (1st Dep't 1989). Under these circumstances, petitioner's complaint about the jury visit is hardly sufficient to cause this Court to find that no reasonable juror would have found petitioner guilty.

As to the second claim, it is barely "new evidence" at all. Petitioner agrees that his trial counsel got evidence in, with the prosecutor's stipulation, of Eason's falsehood on whether she was originally charged in the case. Petitioner only complains that the prosecutor was not more forceful in disavowing Eason's testimony on this point. Significantly, petitioner does not assert that Eason's testimony was perjurious on the most damning evidence. Actual innocence must be based on much stronger evidence than this. Accordingly, this Court finds that petitioner has not made a colorable showing of actual innocence, and therefore does not need to reach the difficult constitutional issues raised above. The petition must therefore be dismissed as time-barred.

### CONCLUSION

For the reasons discussed, respondent's motion to dismiss is granted. The petition for a writ of habeas corpus is denied and dismissed.

**SO ORDERED**

### OPINION & ORDER ON RECONSIDERATION

Petitioner Alexander moves this Court to reconsider its judgment of January 13, 1998, dismissing his petition for a writ of habeas corpus as time-barred. Alternatively, the petitioner requests a Certificate of Appealability (COA), pursuant to 28 U.S.C. § 2253(c). For the reasons to be discussed, the motion for reconsideration is denied, but the request for a COA is granted in part.

Alexander was convicted on June 15, 1988, in the New York State Supreme Court, Bronx County, of Murder in the Second Degree and Robbery in the First Degree. Petitioner's direct state review was completed,

and his conviction therefore "final" for purposes of 28 U.S.C. § 2244(d)(1), on August 1, 1990, ninety days after the New York Court of Appeals affirmed his conviction. On March 21, 1997, Alexander filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.

In an Opinion and Order dated January 14, 1998, this Court denied and dismissed the petition as time-barred. *See Alexander v. Keane,* 991 F.Supp. 329, 1998 WL 17737, 1998 U.S. Dist. Lexis 350 (S.D.N.Y.1998). The Court dismissed the petition because it was not filed within a "reasonable time" after the effective date of the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1217 (April 24, 1996) ("AEDPA"), and was thus untimely under the Second Circuit's decision in *Peterson v. Demskie,* 107 F.3d 92, 93 (2d Cir.1997). The Court also rejected challenges that the AEDPA time limitations (as interpreted by *Peterson*) could not be applied to the petitioner on retroactivity grounds, and that the time limitations were unconstitutionally applied to petitioner in violation of the Ex Post Facto and Suspension Clauses of Article I. Finally, this Court addressed the issue of whether a claim of actual innocence could overcome the time bar of a statute of limitations, but decided that even if it could, Alexander had not met the standards required for such a claim.

On January 29, 1998, the petitioner filed this motion. Petitioner argues the Court did not adequately consider two claims in dismissing his habeas petition. First, relying on a statement made by the district court in *Mitchell v. Cain,* 971 F.Supp. 1064, 1066 (W.D.La.1997), petitioner asserts that Janet Reno, the United States Attorney General, has issued a directive to all United States Attorneys that they should concede that there is a full one-year grace period after the effective date of the AEDPA for filing motions under 28 U.S.C. § 2255. Second, the petitioner argues that by dismissing his petition as time-barred, this Court inappropriately applied the AEDPA statute of limitations retroactively. Neither claim merits reconsideration.

As for the first argument, this Court has no evidence, apart from the cited opinion, that the purported order by the Attorney General has in fact been given. However, even if given, such an order is irrelevant to this case. Whether the United States chooses to waive the statute of limitations defense in § 2255 cases does not in any way bind the state of New York to do likewise with respect to petitions for habeas corpus under 28 U.S.C. § 2254. In *Mitchell,* the case cited by petitioner, the district court referred to the alleged Attorney General order only as persuasive authority for giving state habeas petitioners a full one year grace period; that court, however, had no binding precedent to the contrary because the Fifth Circuit had not decided the issue. *See Mitchell,* 971 F.Supp. at 1065, 1066. In contrast, the Second Circuit has decided in *Peterson* that a full year grace period need not be given, and that precedent, not *Mitchell,* is binding upon this Court.

As to the second issue, this Court did address directly retroactivity in its January 14 Order. *See Alexander,* 991 F.Supp. at 333 ("Petitioner's arguments that the AEDPA statute of limitations should not be applied retroactively have been addressed by the Second Circuit in *Peterson* and in *Reyes v. Keane,* 90 F.3d 676 (2d Cir.1996), and are therefore foreclosed."). In *Reyes,* the Second Circuit held that the AEDPA statute of limitations provisions would not apply to petitions filed before the Act's effective date—i.e., April 24, 1996—but reserved the question of whether and to what extent the statute of limitations would apply to petitions filed after that date when the underlying judgment of conviction became final (the date on which the AEDPA's limitations period begins to run) prior to April 24, 1996. *See Reyes,* 90 F.3d at 679. That question was answered in *Peterson,* where the Second Circuit held that petitioners whose convictions became final prior to April 24, 1996, would have only a "reasonable time" thereafter in which to file. *See Peterson,* 107 F.3d at 93.

Contrary to petitioner's claim, the Supreme Court's subsequent decision in *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), does not affect *Peter-*

*son*'s applicability. In *Lindh,* the Supreme Court decided that the provisions of the AEDPA which affected Chapter 153 of Title 28, United States Code (28 U.S.C. § 2241–2255) "generally apply only to cases filed after the Act became effective." *Lindh,* —— U.S. at ——, 117 S.Ct. at 2068 (emphasis added). As noted, *Peterson* dealt precisely with those cases, such as the petitioner's, which were filed after the AEDPA was enacted, but in which the conviction became final prior to the Act. Moreover, *Reyes* had already held precisely the same result as the Supreme Court reached in *Lindh,* and the *Peterson* court saw no conflict between its ruling and that in *Reyes.* This Court is bound to follow *Peterson* until and unless it is overruled by the Second Circuit or by the Supreme Court, and *Lindh* in no way calls *Peterson* into question. Nor does *United States v. Perez,* 129 F.3d 255 (2d Cir.1997), cited by petitioner, require a different result. In *Perez,* the Second Circuit held that its ruling in *Lozada v. United States,* 107 F.3d 1011, 1013 n. 1 (2d Cir.1997), that the COA requirements of the AEDPA applied to § 2255 petitions filed prior to the AEDPA's effective date, could not withstand the Supreme Court's decision in *Lindh. See Perez,* 129 F.3d at 260. Again, however, this decision merely recognizes that the AEDPA amendments to Chapter 153 do not apply to petitions *filed* prior to April 24, 1996. Alexander filed his petition *after* that date, and *Peterson* is still fully applicable. The petitioner's motion for reconsideration is therefore denied.

Petitioner also requests that he be granted a Certificate of Appealability in order to appeal the denial of his habeas petition. The AEDPA bars appeal from the denial of a habeas petition "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). The Second Circuit has determined that district court judges may issue a COA. *See Lozada,* 107 F.3d at 1016.

In order to warrant a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Second Circuit has held that the standard for a COA is the same as for the Certificate of Probable Cause formerly required by 28 U.S.C. § 2253 prior to the AEDPA. *See Reyes,* 90 F.3d at 680. Under this standard, "'the petitioner need not show that he should prevail on the merits. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.'" *Nelson v. Walker,* 121 F.3d 828, 832 (2d Cir.1997) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3395 n. 4, 77 L.Ed.2d 1090 (1983)).

Neither of the two issues Alexander presses on his motion for reconsideration meets this standard, the first because it is beyond debate that the Attorney General's directive is irrelevant to Alexander's petition, and the second because the retroactivity of the AEDPA is a matter of statutory interpretation, not constitutional right. *See Lindh,* —— U.S. at ——, 117 S.Ct. at 2063 ("normal rules of [statutory] construction apply" to determination of AEDPA's temporal reach). Only to the extent that the Ex Post Facto Clause of the Constitution is implicated—a claim not pressed by Alexander in this motion—would a constitutional right be involved. The Court rejected such a claim in its January 14 order, *see Alexander,* 991 F.Supp. at 333, and does not believe this issue warrants further review on appeal.

On one issue, however, the Court believes a serious constitutional question is raised, and that is whether the application of a time limitation to bar a first federal habeas petition is a violation of the Suspension Clause, *see* U.S. Const. art I, § 9, cl. 1 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").[1] Although this Court has

---

1. Although petitioner's request for a COA does not expressly mention a Suspension Clause claim, he does ask for a COA "to allow the Second Circuit to decide this constitutional issue concerning the retroactive effect" of the statute of limitations. Consistent with this Court's obligation to read *pro se* petitions liberally, the Court construes the request as one for a COA on any

held that the Suspension Clause is not violated by the AEDPA's limitations period, see *Rodriguez v. Artuz,* 990 F.Supp. 275, 1998 U.S. Dist. Lexis 131, 1998 WL 9377 (S.D.N.Y. 1998), Judge Robert J. Sweet of this district has taken the opposite view, and the Second Circuit has granted an interlocutory appeal on this question. *See Rosa v. Senkowski,* No. 97 Civ. 2468, 1997 U.S. Dist. Lexis 11177, 1997 WL 436484 (S.D.N.Y. Aug. 1, 1997), *appeal docketed,* No. 97–2974 (2d Cir.1997). Because the Second Circuit has seen fit to take the issue on appeal, it follows virtually a fortiori that the COA standard has been met. Accordingly, this Court grants petitioner's request for a COA.

### CONCLUSION

For the foregoing reasons, the Court denies Alexander's motion for reconsideration of its January 14, 1998, Order dismissing his habeas petition. This Court grants petitioner a Certificate of Appealability limited to the issue of whether the application of the AEDPA statute of limitations to time-bar his petition violates the Suspension Clause of the United States Constitution.

**SO ORDERED.**

constitutional issue raised by the application of the statute of limitations to bar his petition.